DOYLE E. CARLTON, as Governor, et al., v. JOHN E. MATHEWS.

137 So. 815.

En Banc.

Opinion filed October 28, 1931.

Petition for rehearing denied November 18, 1931.

306

310

312

*Cary D. Landis*, Attorney General, *H. E. Carter*, Assistant Attorney General, *R. A. Henderson, Jr.*, *H. P. Adair* and *John C. Cooper, Jr.*, for Appellants;

*John E. Mathews*, *S. P. Robineau*, *Blake & Taylor*, *J. Henry Blount*, *W. M. Madison*, *J. W. Blalock* and *Sutton, Tillman & Reeves*, for Appellee.

CAMPBELL, Circuit Judge:—A citizen, resident and taxpayer of Duval County, Florida, by bill of complaint brought in the Circuit Court for Leon county, against the Governor, the Comptroller and the Treasurer of the State, whose offices are at the capitol of the State in Leon county, alleges in effect that Chapter 15659, Acts of 1931, and portions thereof violate stated organic provisions and prays; to have the statute adjudged to be void; to have the "Second Gas Tax" levied by such act declared to be void; to have "the attempted appropriation of the proceeds of such second gas tax" decreed to be void; to require such tax, if held to be a county tax, "to be appropriated to the several counties as collected and paid in by the several counties;" and for appropriate injunctions and for general relief.

The Court overruled a demurrer to the bill of complaint filed by the State officials and ordered:

"That Ernest Amos, as comptroller of the State of Florida, be, and he is, hereby restrained and enjoined until the further order of the Court from drawing his order on the Treasurer of the State of Florida, for the amount of money with the State Treasurer in the 'State Roads Distribution Fund,' or any part thereof, that may have been or that may be, derived from what is termed the 'Second Gas Tax' in the Act known as House Bill Number 65X (Chapter 15659) enacted by the Legislature of the State of Florida, at the first Extraordinary Session of the Legislature of 1931, and that W. V. Knott, as Treasurer of the State of Florida, be and he is hereby restrained and enjoined until the further order of the Court from paying any such order or warrant as the said Comptroller of the State of Florida is herein restrained from drawing."

An appeal was taken by the defendant State officials who now apply for a supersedeas of the restraining order.

As only questions of law are involved and as counsel for all parties have fully and ably argued the merits of the bill of complaint upon which the restraining order was made, the court will adjudicate the merits of the cause to conserve the interests of all concerned. Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963; Ann. Cas. 1914B 916; Antonio v. City of Tampa, 87 Fla. 82, 99 So. 324; Anderson v. City of Ocala, 87 Fla. 257, 99 So. 667; Hathaway v. Munroe, 97 Fla. 28, 119 So. 149.

Three errors are assigned by the appellants, the first being that the court erred in overruling the demurrer to the bill of complaint, and the second and third, that the court below erred in granting the restraining order against the Comptroller of the State, and the State Treasurer respectively.

The demurrer to the bill of complaint questions its sufficiency in the following particulars, viz:

(a) The rights of the complainant to maintain the suit.

(b) The sufficiency of the allegations of the bill of complaint to warrant the relief prayed for therein.

(c) The failure of the bill of complaint to allege facts showing that the act or any part thereof is in violation of the State or Federal Constitutions.

(d) The failure of the bill of complaint to show that the act does not constitute a valid exercise of legislative power and authority.

The bill of complaint attacks House Bill 65X, Chapter 15659, Laws of Florida, Acts 1931, as being violative of certain provisions of the Constitution of the State of Florida, and of the United States of America.

We shall first consider the attack made in the bill of complaint upon the constitutional enactment of the law. In paragraphs ten and eleven it is claimed that the law was never legally passed through the Legislature, in that Sections 14 and 17, of Article 3, of the Constitution of the State of Florida were violated in the passing of the Act.

Paragraph ten alleges in substance, that the Journals of the House of Representatives, and the Senate show that the bill originated in, and was passed by the House, on June 12; that the Journal of the Senate shows that the bill was amended and passed by the Senate on June 15; that the Journals of the House show that on June 17th, a further amendment was offered, in the House, and that the amendment was "supposed" to have been adopted by the House on June 18, is shown by the Journal of the House of that date; that if it is construed and determined that the House in which the bill originated has power to further amend the bill after it has been amended and passed the other house, then Article 3 of the Constitution is further violated, in that the House of Representatives never concurred in the Senate amendment nor adopted the House substitute for the Senate amendment, and never concurred in the substitute for the Senate amendment, as shown by the Journal of the House of Representatives of June 17 and June 18; that it nowhere appears that the substitute

for the Senate amendment to the bill, was ever voted upon or adopted, that it does appear on page 27 of the House Journal of June 18, that a motion was adopted to concur in the Senate amendment as amended, when the Journal shows there was never adopted any amendment to the Senate amendment.

We might say, in passing that, we have examined the House Journal of June 18, 1931, and we find that on the date above mentioned the motion to adopt House substitute for Senate amendment to House Bill 654 was passed. The figure "4" is without doubt a Typographical error. The title as quoted in the Journal is identical with the title to House Bill 65X, as amended. See Morris vs. City of Gainesville, 60 Fla. 338, 52 So. 739.

It is contended in paragraph eleven of the bill of complaint that House Bill 65X never passed as required by Section 17 of Article 3, of the Constitution, in that the same was not read on three separate days, and two-thirds of the members present did not deem it expedient to dispense with the requirement, and that the same was not read by its sections on second reading or final passage.

Article III of the constitution contains the following:

"Any bill may originate in either House of the Legislature, and after being passed in one House may be amended in the other." Section 14.

"Every bill shall be read on three several days, unless two-thirds of the members present when such bill may be pending shall deem it expedient to dispense with this rule. Every bill shall be read by its sections on its second reading and on its final passage, unless on its second reading two-thirds of the members present in the House where such bill may be pending shall deem it expedient to dispense with this rule. The vote on the final passage of every bill or joint resolution shall be taken by yeas and nays, to be entered on the journal of each House * * ." Section 17, as amended in 1896.

The legislative Journals show that at an extraordinary session of the legislature House Bill No. 65X was intro-

duced in the House by a two-thirds vote on June 12, 1931, the title being:

"A bill to be entitled An Act relating to taxation, levying and imposing an excise tax on gasoline and other like products of petroleum in addition to other taxes thereon; levying and imposing a license tax on every dealer in gasoline or any other like product of petroleum; providing for the report of sale of such commodities, and the collection and payment of such taxes, creating special funds for the reception of such taxes; providing the purpose of such taxes, and for the deposit, appropriation and disposition of the proceeds derived from such taxes, and prescribing the duties of certain officials with reference thereto; and declaring certain roads to have been and to be built for State purposes and as being State undertakings; repealing Chapter 14573, Laws of Florida, Acts of 1929, relating to the subject of gasoline taxes; repealing Chapter 14575, Acts of 1929, relating to the subject of gasoline taxes and raising special revenue for educational purposes, and all laws in conflict with this Act and penalties for violation hereof; and other matters in connection with all of the above;

that on the same day House Bill No. 65X was on a two-thirds vote read a second time by its title and also on a two-thirds vote read a third time in full and passed by a vote of 84 to 7; that on June 15, House Bill No. 65X was on a two-thirds vote received by the Senate, on a two-thirds vote read the second time in full, and the title to the bill was stricken, the following title being substituted:

"An Act relating to taxation, levying and imposing an excise tax on gasoline and other like products of petroleum in addition to other taxes thereon; levying and imposing a license tax on every dealer in gasoline or any other like product of petroleum; providing for the report of sale of such commodities, and the collection and payment of such taxes, creating special funds for the reception of such taxes; providing the purposes of such taxes, and for the deposit, appropriation and disposition of the proceeds derived from such taxes, and prescribing the duties of certain officials with reference thereto, and declaring certain roads to have been and to be built for

State purposes and as being State undertakings; repealing Chapter 14575, Laws of Florida, Acts of 1929, relating to the subject of gasoline taxes; repealing Section 1 of Chapter 14573, Acts of 1929, relating to the subject of gasoline taxes, and all laws in conflict with this Act; providing for the enforcement of this Act and penalties for violation hereof.''

Then all after the enacting clause was stricken, and other provisions entered at length in the Journal, which are of the same general nature and in accord with the substituted title were inserted in lieu of the stricken provisions. On a two-thirds vote the bill as amended was read the third time in full and passed by a vote of thirty to seven. House Bill No. 65X as amended and passed by the Senate was received by the House June 16. On June 18, the House by a fifty-eight to thirty vote adopted a substitute amendment for the Senate amendment to House Bill No. 65X by striking out all after the enacting clause and inserting in lieu thereof other provisions of the same general nature which were entered in full upon the Journal. By a vote of 60 to 31 the House concurred in Senate amendment as amended to House Bill No. 65X. The title to House Bill No. 65X as amended by the Senate was then stricken and the following inserted:

''A bill to be entitled An Act relating to taxation, levying and imposing an excise tax on gasoline and other like products of petroleum in addition to other taxes thereon; levying and imposing as a license tax on every dealer in gasoline or any other like product of petroleum; providing for the report of sale of such commodities, and the collection and payment of such taxes; providing the purposes of such taxes, and for the deposit, appropriation and disposition of the proceeds derived from such taxes, and prescribing the duties of certain officials with reference thereto, and declaring certain roads to have been and to be built for State purposes and as being State undertakings; repealing Chapter 14575, Laws of Florida, Acts of 1929, relating to the subject of gasoline taxes and raising special revenue

for educational purposes, and all laws in conflict with this Act; providing for the enforcement of this Act and penalties for violation hereof.''

''And Senate amendment, as amended, to the title of House Bill No. 65X was concurred in by the House of Representatives.''

On June 19th, the Senate by a vote of twenty-eight to one concurred in the House amendment to Senate amendment of House Bill No. 65X striking out all after the enacting clause and inserting other provisions in lieu thereof. The Senate also concurred in House Bill No. 65X striking out the title and inserting another title as shown above. House Bill No. 65X was enacted as a law and upon approval by the Governor became Chapter 15659, Acts of 1931.

Thus it appears that the House of Representatives duly passed a bill by a yea and nay vote entered on the Journal of the House, and the Senate amended the bill by striking out the title and inserting another title of the same general nature, which amended title was spread on the Senate Journal, and thereafter further amended the House bill by striking out all after the enacting clause and inserting in lieu thereof provisions that relate to the general subject covered by the original House Bill and that have proper relation to the original and amended title of the bill, which amendment was spread in full on the Senate Journal, and then by a yea and nay vote entered on the Senate Journal, the Senate duly passed the bill as amended, after a full reading on final passage. The House amended the amended bill passed by the Senate, and the House, after the bill was read in full, by a yea and nay vote entered on the Journal passed the amended bill as amended by the House, and the Senate concurred in the action of the House. This is a compliance with the provision of the constitution that upon final passage of a bill the vote shall be taken by yeas and nays to be entered upon the Journal of each House. The constitution does not require the vote by which the reading

of bills on separate days or by sections on second reading may be dispensed with, to be by yeas and nays or to be entered on the Journals. See State v. Dillon, 42 Fla. 95, 28 So. 781; State ex rel. v. Brown, 20 Fla. 407; State ex rel. v. Hocker, 36 Fla. 358, 18 So. 767; Mathis v. State, 31 Fla. 291, 12 So. 681; Amos v. Gunn, 84 Fla. 285, 94 So. 165.

"The silence of legislative journals upon any step in the enactment of a law, is not affirmative evidence to the courts that such a step was, or was not taken, except in those particular respects wherein the constitution mandatorily requires such journal expressly to show the action taken; such for example as the entry of the ayes and nays upon the final passage of a bill." West v. State, 50 Fla. 154, 39 So. 412. See also, Turner v. Hocker, 36 Fla. 856, 18 So. 767; State ex rel. Buford v. Carley, 89 Fla. 361, 104 So. 577.

In the case of State ex rel. Buford v. Carley, supra, we said,

"A statute is presumed to have been duly enacted unless the legislative journals show that the mandatory requirements of the Constitution for the enactment of the statute were not complied with in the consideration and passage of the particular bill."

and again,

"Our Constitution does not require that the Journal shall show affirmatively that a bill was read "by Sections" on its final passage, and if they do not so show, the presumption, in the absence of affirmative evidence to the contrary, would be that it was read by Sections as required."

Having found that the law under consideration was legally enacted, we now turn to the other ground set forth in the bill of complaint, upon which this law is attacked as being violative of certain provisions of the Constitution. The complainant alleges in paragraphs seven of the bill of complaint, that Chapter 15659, Laws of Florida, 1931, is void and of no effect, that the levy of the tax provided for therein, as also the appropriation of the moneys derived from the levy of the Second Gasoline Tax, are void and of

no effect, being in violation of the Constitutions of the State of Florida, and of the United States of America.

It is alleged in the bill of complaint that the law, as also the levies of the taxes, and the appropriation of the funds, derived from such levies, are violative of Sections 2, 3, 4, 5 and 6 of Article IX, and Section 12 of the Declaration of Rights of the State of Florida, and the Fourteenth Amendment of the Constitution of the United States of America.

In the brief filed by the appellee in this court, it is asserted, that the purposes, aims, and objectives of the Legislature in passing Chapter 15659, Laws of Florida, Acts of 1931, (House Bill 65X) were:

1.   To levy State taxes and appropriate State money for the primary purpose of paying in whole or in part the principal or interest on the bonds of its political subdivision, directly or indirectly, or contingently, by or through a ''scheme'', as appellee calls it;

2.   To recognize and declare that all moneys spent by counties and districts for county or district purposes upon all roads heretofore designated State roads, to have been spent wholly in the performance of a State function and that such expense should be wholly borne by the State, and that such advances, by the counties and districts should be repaid by the State to the counties and districts.

Before taking up for consideration, the attacks made upon the constitutional validity of the law in question, it will be well for us to first examine the law.

In our discussion of the enactment of the law, we have already quoted its title in full, therefore we will not quote it again. From the title it appears that the general purpose of the bill is to provide for the levy and collection of an excise tax on all gasoline and other petroleum products not already taxed, to raise revenue for State purposes. It provides for the appropriation and the disbursement of the funds arising from said tax, and designates certain purposes for which this revenue shall be used. In determining

the necessary State expenses to which the moneys derived from this tax shall be used to defray, and, in explanation of such determination upon the part of the Legislature, it is declared that certain roads have been built, and are to be built for State purposes and as State undertakings.

Section one provides for the levy of a license tax of five dollars on each dealer in gasoline and other petroleum products in the State; also an excise tax of six cents per gallon on every gallon of gasoline or other petroleum products sold within the State. This six cents gasoline tax being by the terms of the Act divided as follows:

"First Gas Tax: A tax of three cents per gallon apportioned for the use of the State Road Department."

"Second Gas Tax: A tax of three cents per gallon to be apportioned as provided by Section 8 of this Act."

In Section three of the Act, it is provided that the funds realized from the levies of said First Gas Tax, and Second Gas Tax shall be paid into certain accounts kept by the State Treasurer, viz:

"First Gas Tax shall be paid into the 'State Roads License Fund.'

"Second Gas Tax shall be paid into the 'State Roads Distribution Fund' which said Special Funds are created for the reception of same."

The Sections of the law most strenuously assailed in the complainant's bill of complaint are Sections 7, 8, 9 and 10. We will therefore quote them in full:

SECTION 7. It is hereby expressly recognized and declared by the Legislature of the State of Florida that all roads being constructed or built or which have heretofore been constructed or built by the State Road Department under prior authorization and/or designation by the Legislature of the State of Florida as State Roads, or which were constructed or built by any county or special road and bridge district or other special taxing districts thereof, were, are and will be constructed and built as State projects and undertakings, and that the cost of the construc-

tion and building thereof was, is and will be a legitimate proper state expense incurred for a general and state purpose and should be wholly borne by the State of Florida. It is hereby expressly recognized that certain of the counties of the State of Florida and/or special road and bridge districts or other taxing districts of such counties have advanced or contributed and paid to the State Road Department varying sums of money to be used and expended by said State Road Department in the construction and building of state roads theretofore authorized and/or designated by the Legislature of the State of Florida as state projects, and it is hereby expressly recognized that certain of the counties of the State of Florida and/or special road and bridge districts or other taxing districts of such counties have paid or expended or caused to have been paid or expended varying sums of money in the construction and building of certain roads that are now state roads and heretofore designated as state roads by the Legislature of the State of Florida and that all such moneys have been and are being expended, furnished, advanced, contributed or paid out on account of expenses of the State in construction and building of said state roads to and for the general benefit of the State and that such sums should be returned and repaid respectively to each county to the amount that such county and/or any special road and bridge district or special taxing districts thereof have advanced or expended in the construction of the same.

SECTION 8. (a) The Chairman and auditor of the State Road Department shall, within ninety (90) days after this act becomes a law, ascertain and certify to the Comptroller of the State of Florida and to the Board of Administration and to each county within the State of Florida the amount of money advanced and paid by the several counties, and/or special road and bridge districts or other special taxing districts of any counties, to the state for the use of the State Road Department in the con-

struction and building of state roads, specifying separately and particularly the amount advanced and paid by each county; and the chairman and auditor of the State Road Department shall, within ninety (90) days after this act becomes a law ascertain and certify to the Comptroller and to the Board of Administration and to every county of the State of Florida, the amount of money furnished, advanced, contributed, paid out or expended by the several counties and/or special road and bridge district or other special taxing districts of such counties in the building and construction of roads that are designated state roads, specifying separately and particularly the amount furnished and expended by each county. The amount so certified as to any county shall include all moneys advanced, contributed, paid and expended, as aforesaid, by such county and by every special road and bridge district or other special taxing district for road and bridge purposes on roads now designated as state roads, in such county.

(b)   Said certificate shall be audited by the Comptroller, and, being found correct, shall constitute the basis for the subsequent allocation and apportionment of the moneys to be derived from the Second Gas Tax and from which the disbursement shall be made to, or for the benefit of, such respective counties as herein provided, out of said ''State Roads Distribution Fund'' account. The Comptroller shall each month, draw his order on the Treasurer of the State of Florida for the full net amount of moneys then with the State Treasury in said ''State Roads Distribution Fund'' specifying the counties to which said moneys shall be paid, and the amount to be paid to each county, respectively, which said sums so apportioned to the counties are hereby appropriated monthly out of said ''State Road Distribution Fund'' account. Said orders of said Comptroller shall be countersigned by the Governor, and shall be payable to the State Treasurer as ex officio Treasurer of the counties, respectively, participating therein. The

monthly schedule of installments to be so paid to or for such counties shall be computed, determined and paid out monthly in the following ratio, to-wit:

1. The proceeds of one cent of the said Second Gas Tax shall be apportioned to the credit of the several counties on the basis of area of said counties, that is to say, the apportionment shall be to the county in the proportion that the area of the county shall bear to the area of all the counties;

2. The proceeds of one cent of the said Second Gas Tax shall be apportioned to the credit of the several counties on the basis of population of the counties, that is to say, the apportionment shall be to the county in the proportion that the population of the county shall bear to the total population of the state, as determined by the last preceding general State or Federal census taken; and

3. The proceeds of One cent (1c) of said Second Gas Tax shall be apportioned to the credit of the several counties on the basis of contribution which has heretofore been made by the respective counties and/or special road and bridge districts or other special taxing districts of such counties to the construction of state roads, either through funds or the equivalent thereof of the county and/or special road and bridge district, or other special taxing districts, of such counties turned over to the State Road Department from time to time or through roads constructed by the counties and/or special road and bridge districts or other special taxing districts of such counties at county or district expense, and which were then or thereafter made a part of the existing state highway system.

(c) Whenever the amount furnished, advanced, paid out, contributed or expended by any county and/or special road and bridge district or other special taxing district of such county, directly, or through the State Road Department, in the construction or building of such state roads, within such county, has been returned to such county,

such county shall continue to participate in the distribution of the three (3c) cents of the Second Gas Tax as provided in Section 8 (b) hereof, so that thereafter a sum equal to the sum provided to be returned to or for such county under this act shall be monthly paid into the State Road License Fund, and same is hereby monthly appropriated to the use of the State Road Department for the construction within said county of those State Roads within such county which were at the time of the passage of this act designated as and recognized by the State Road Department as being a part of the first, second or third preferential system of state roads, and which roads, to the extent of such funds, are to be constructed and built in such counties, respectively, by the State Road Department as soon as practicable as state projects and undertakings.

Such funds shall be applied and used by the State Road Department for such purpose and not otherwise, and the expense of constructing said roads is hereby declared to be a legitimate proper state expense to be incurred for a general and state purpose.

When any county in the State of Florida no longer participates under the provisions of this act in the return to or for it of moneys contributed for the construction of state roads, as herein provided, and when these roads shall have been constructed which are at the time of the passage of this act a part of the first, second and third preferential system of state roads within such county, then and thereafter all funds thereafter derived from the Second Gas Tax theretofore allotted or appropriated to or for said county shall be transferred to the State Road License Fund of the State of Florida in the manner and to be expended as provided by law.

SECTION 9. All moneys provided for hereunder to be credited to the various counties of the State and so paid to the State Treasurer as ex officio county Treasurer shall be

administered by the Board of Administration, as provided by law.

Moneys to be used for road and bridge construction in the completion of the first, second and third preferential state road system within any county, as herein provided, shall be placed in the State Treasury in the State Road License Fund to the credit of the State Road Department and same is hereby appropriated for use by said State Road Department in the construction of roads and bridges in such preferential road system in the various counties to which the same is credited.

SECTION 10. For the purposes of this act, any funds derived from the sale of any bonds, time warrants, certificates of indebtedness, or other general obligations of any county, or special road and bridge district of any county, heretofore turned over or delivered to the State of Florida to the Credit of the State Road Department by any county, or special road and bridge district thereof, to apply toward the construction or building of any state road, shall be considered as an advance of payment to said State Road Department and subject to repayment and return to such county under the provisions of this Act to the amount only of the proceeds received by the State of Florida from the sale thereof. Any funds, bonds, time warrants, certificates of indebtedness, or other general obligation, of any county, or any special road and bridge district, turned over and delivered to the State of Florida to the use of the State Road Department in constructing state roads, and now remaining in the State Treasury, and not now contracted to be expended, shall be returned to the respective counties and/or special road and bridge districts that turned over and delivered the same, as soon as practicable, by the proper state officials.

The First Gas Tax is not being assailed and therefore we shall consider the law as it pertains to the "Second Gas Tax."

It is conceded by both parties that the "Second Gas Tax" is a State tax. The appellants contend however that it is levied for, and appropriated to, a legitimate State purpose; while the appellee contends that it is a State tax levied and collected to be appropriated and disbursed in the payment of the principal and interest on county, and road and bridge district bonds, and for the purpose of paying to the counties and special and road districts for roads already constructed as County or district roads, and for moneys advanced and paid by such political subdivisions, for the construction of such roads as local undertakings. In other words that it is a State Tax, to be used according to the provision of the Act for County purposes.

For several years in our State the levy and collection of a gasoline *excise* tax, and the construction and maintenance of roads have been so interrelated the one to the other, that a consideration of the one almost of necessity involves the consideration of the other. In as much as the matter of the expenditures of money by the counties and special road and bridge districts and other taxing districts, in the construction of roads, and advanced and contributed for the construction of roads, which have by legislative enactments become State roads, is involved, we deem it proper to refer to some of the statutes regarding the duty and the authority of counties relative to the construction etc. of public roads and also to briefly review the history of road building, and also the evolution, so to speak, in road construction in the State.

We find that counties and districts are and have been authorized to construct public roads. Sections 2436 (1588), 2309 (1531), 2666 (1634), 2679 (1647), 2687 (1655) et seq., Compiled General Laws, 1927.

As to State aid roads, see Sections 1632, 1637 (1197), 1657, Compiled General Laws, 1927. See also subsequent acts. In the year 1921, the Legislature of Florida enacted a law providing for counties and Special Road and Bridge

Districts, to aid in the construction of State and State Aid roads; this law is known as Chapter 8553, Laws of Florida, the title and Section one of which are as follows:

"AN ACT Authorizing Any Department of the State and Any County and Any Special Road and Bridge District in This State to Aid in the Construction or Maintenance of Any State or State Aid Road by Contributions to the State Road Department, of Cash, Bonds, Time Warrants or Other Things of Value, Made Heretofore or to be Made Hereafter, in the Construction or Maintenance of Roads, and Authorizing the State Road Department to Accept and Receive Such Aid or Any Such Contributions, and Use the Same in the Construction or Maintenance of State or State Aid Roads. To Construct Roads and Bridges in said Counties as a Part of the State Highway System with the Proceeds of the Several County Road Bonds Issued and to Obtain Federal Aid in Connection Therewith.

Be It Enacted By the Legislature of the State of Florida:

SECTION 1. Any Department of this State, and any county, or any special road and bridge district in this State, be and is hereby authorized to aid in the construction or maintenance of any State or State Aid Road, by contributions to the State Road Department of cash, bonds, time warrants, or other things of value in the construction or maintenance of roads, and the State Road Department be and is hereby authorized to accept and receive such aid and any such contributions and to dispose and use the same in the construction or maintenance of any State or State Aid Road. And the State Road Department be, and is hereby granted authority to enter into agreements with the County Commissioners of the several counties of the State of Florida, in which county road bonds have been, or which shall hereafter be voted by the people of said county, and in which one or more roads of said county has or have been or shall hereafter be designated as a part of the system of State highways or as a State Aid Road, whereby the State Road Department shall construct the roads and the bridges incident thereto, which shall be, or shall have been so voted to be constructed by the people, and in accordance with specifications which shall be agreed up-

on between the said State Road Department and the County Commissioners of said county and to receive from the said Counties in consideration thereof, the proceeds of the sale of the said county bonds so voted, the net amount after deducting expenses and commission on the sale and administration of said bonds. The State Road Department in no instance to receive from said counties an amount in excess of the actual cost of the construction of said roads.''

The right to create ''incorporated districts'' is recognized in section 10, Article IX.

For many years beginning in the early territorial days the public roads in Florida were constructed and maintained by the counties pursuant to statutory authority. See ''An Act concerning roads, highways and ferries, ''approved September 13, 1822; Thompson's Digest, p. 139; McClellan's Digest, p. 898, sections 2436 (1588), 2451 (1602), 2163 (1475), Compiled General Laws 1927: This policy proved inadequate to provide sufficient and suitable highways to meet the requirements of modern transportation in a rapidly growing State of large areas.

In recent years extensive systems of hard surfaced roads have been constructed throughout the State of Florida by the State and by counties, and special taxing districts by the use of the proceeds of ad valorem and excise tax levies and by special assessments and bond issues by counties and special taxing districts, all under legislative authority. See Chapter 6883, Acts 1915 and amendatory Acts; section 2309 (1531); 2666 (1634); 1632 (1192); 1657 et seq., Compiled General Laws, 1927. Chapter 9311, Acts 1923, designated and established roads to ''constitute the system of State roads of the State and when located and constructed by the State Road Department shall become and be the property of the State.'' Subsequent statutes added other roads to the State system of roads. Section 1657, Compiled General Laws, and Acts of 1929, 1931. Section 1537 (1197) Compiled General Laws 1927, contains a provision that

"the rights of way of all roads or highways laid out or constructed or taken over by the said State Road Department now, or hereafter, the property of any of the counties of this State, is hereby declared to be the property of the State."

No State bonds have been issued for road construction purposes because the constitution forbids the issue of State bonds except "for the purpose of repelling invasion or suppressing insurrection or for the purpose of redeeming or refunding bonds already issued at a lower rate of interest." Section 6, Article IX. There are now no outstanding bonds of the State of Florida to be redeemed or refunded.

All the public roads in the State whether constructed by State funds or by county or district taxation or bond issues, are subject to State control under appropriate legislation; and their construction may be paid for as statutes direct in the absence of organic limitations. The constitution of the State contains no provisions that expressly regulate or limit the means or method of construction or maintenance of public highways; nor does the constitution forbid the counties and districts of the State to issue bonds for the construction of county and district roads.

The legislative policy of liberally providing for the construction of separate systems of State, county and district highways by means of State taxation and by county and district taxation, special assessments and bond issues by counties and districts, has been modified, since the construction of good roads in nearly all sections of the State. The present policy is to curtail expenditures for further road construction, and by statute to provide additional means with which to pay for public roads already in whole or in part constructed by governmental subdivisions under legislative authority, many of which roads have been by statute made a part of the State highway system.

There is great inequality among the counties of the State as to their population, their assessable property values and

their area. The more populous counties generally are smaller in area while the more sparsely populated counties have greater areas and consequently more road mileage and less financial resources. County or district boundary lines have no controlling relation to the State system of roads, and the county and district roads generally connect with roads extending into other counties, so that the public roads in all parts of the State are freely used by the general public without reference to county or other boundary lines. Sales of gasoline for immediate consumption are greater in populous communities and at junction and terminal points, but the gasoline so sold is used for motor vehicle transportation over the public roads without reference to the sales points or to county or local boundary lines. Such diverse conditions require the exercise of legislative judgment and discretion that is plenary in providing public roads when no applicable provision of organic law is violated.

In the consideration of the Act of the Legislature involved in this case, we are called to deal with a number of propositions of law. They are:

First: Whether or not the Second Gas Tax provided for in Chapter 15659, Laws of Florida, Acts 1931, is a State or a County excise tax.

Second: If the Second Gas Tax is held to be a State tax, whether or not the primary purpose of the levy of such tax and the appropriation of the funds derived from such levy is to pay the principal and interest on the bonded indebtedness of counties and for road and bridge districts, or other taxing districts in the counties.

Third: Whether or not, under the Constitution of Florida, the Legislature can, by statute provide for the reimbursement to counties and road and bridge districts of moneys used by them in the construction of roads or advanced, contributed and paid by them toward the construction of roads which had been and were at the time of

the passage of the law designated and taken over by the Legislature as State roads.

Fourth: Whether or not the appropriations provided for in the statute are sufficiently definite and certain to meet the requirements of the constitution, and whether such appropriations are valid.

Fifth: Whether or not the Act embraced more than one subject and matters germane thereto; and whether or not the subject is briefly stated in the title of the Act.

Sixth: Whether the Act denies to the appellee the equal protection of the law; and does it deprive him of his property without due process of law.

It is conceded by both appellant and appellee that the Second Gas Tax provided for in this law is a State tax. And we think the parties are correct in their conclusions. The Second Gas Tax, the levy of which and the appropriation and disbursement of the proceeds, of which are provided for in House Bill 65X, Chapter 15659, Laws of Florida, Acts 1931, is in our opinion a State tax.

The burden of the appellee's contention is, that the act undertakes to appropriate, and disburse this State tax, to the payment of county and road and bridge district bonds; and that, in so doing, it violates the following provisions of Article IX of the Constitution of Florida, to-wit:

"Section 2. The Legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year, and also a sufficient sum to pay the principal and interest of the existing indebtedness of the State."

and

"Section 6. The Legislature shall have power to provide for issuing bonds only for the purpose of repelling invasion or suppressing insurrection or for the purpose of redeeming or refunding bonds already issued at a lower rate of interest."

The appellee claims that the holding of this court in the case of Amos v. Mathews, 99 Fla. 1, 126 So. 308, is con-

clusive of this proposition, and it is confidently asserted that the opinion in the cited case is decisive of the case at bar. In that case it is said,

"The Legislature has no power to levy a State tax for the purpose of *paying county* or *district bonds*. If levied as State taxes, the second and third gas taxes levied by Chapter 14575, Acts of 1929, would be repugnant to the Constitution and void." (Italics supplied.)

The provisions of the statute considered in the case of Amos v. Mathews, supra, were materially different from the provisions of the statute being considered in the instant case. In the former case the court was construing the provisions of Chapter 14575, Laws of Florida, the same being the Gasoline Tax Act of 1929. In that case the court was considering the second and third gas tax provided for in the Act, which provisions were as follows:

"Second gas tax: A tax of one cent per gallon to be apportioned to the several counties respectively;

Third gas tax: A tax of one cent per gallon to be apportioned to each county in the State in the proportion that the *indebtedness authorized, issued and outstanding, in the County* for road purposes or for road and bridge purposes, by the County and/or by any special road and bridge district therein on April 1, 1929, *bore to indebtedness* of the same class of all the counties and/or special road and bridge districts of the State of Florida." (Italics supplied).

The provision for the disposition of the funds realized from this second and third gas tax as provided for in the statute we considered in the case of Amos vs. Mathews was as follows:

"The second and third gas tax, apportioned to each of the several counties as above provided *shall be applied to the payment of interest and principal and/or sinking funds of indebtedness* for *road and bridge construction,* bears to the total *amount of such indebtedness issued* and *now outstanding* in all the *counties heretofore contracted* by each *county respectively* and by the special road and bridge districts in such county, and/or the construction

and maintenance of roads and bridges in such County."
(Italics supplied).

In the Amos v. Mathews case we were also considering
Chapter 14486, Laws of Florida, Acts 1929 as being in pari
materia with Chapter 14575, same being the law providing
for the Administration of certain County funds, by a
Board of Administration.

Section 1 of the Board of Administration Act, Chapter
14486, supra, is as follows:

"It is hereby declared by the Legislature of the State
of Florida that all roads, highways and bridges which
have heretofore been constructed or built, in whole or in
part *from proceeds of bonds issued by the counties of the
State of Florida, or from proceeds of bonds issued by
Special Road and Bridge Districts under the laws author-
izing same,* have been and are and will continue to be
*beneficial* to the State of Florida at large, and have *con-
tributed substantially to the general welfare, settlement*
and *development of the entire State.*" (Italics supplied.)

It will be noticed from the above quoted parts of the
statutes before the court in the case of Amos v. Mathews,
supra, that the purpose of the appropriation of the Second
and third gas tax, if a State tax, was to pay interest and
principal on bonds of the political subdivisions of the State,
on the ground that the *expenditure* of the *proceeds of the
bonds* had been beneficial to the State at large. Or, to put it
in another way, that the moneys realized from county and
road and bridge district bonds used in the construction
of county and district roads, had contributed to the *general
welfare, settlement and upbuilding of the State at large.*
There was no recognition, nor declaration that the roads,
constructed from the proceeds of such bonds were State
roads or had been taken over and designated by the Legis-
lature of the State of Florida, as State roads. There was
nothing said in either of these statutes, recognizing or de-
claring that any of the proceeds of the bonds mentioned
therein had been advanced or contributed in the building

of State roads by the counties and special road and bridge districts. It simply declares, ''that all roads, highways and bridges which have heretofore been constructed or built * * * from the *proceeds of bonds issued by counties.*'' etc. (Italics supplied.)

In the instant case we find no provision in the law, that can be correctly interpreted as levying the Second Gas Tax, and appropriating its proceeds for the purpose of *paying bonds or other similar obligation* of the political subdivisions of the State. In Chapter 15659, Acts 1931, we find that the ''Second Gas Tax'' is to be paid as collected into the ''State Roads Distribution Fund.''

In Section seven it is recognized and declared by the Legislature of the State of Florida that all roads being constructed or built . or which had been constructed or built, or which might thereafter be constructed or built by the State Road Department, under prior authorization and/or designation by the Legislature of the State of Florida as State Roads, ''or which were constructed *or built by county or special road and bridge districts or other special taxing districts* thereof, were, are and will be constructed and built as State projects and undertakings, and that the cost of the construction and building thereof was, is and will be *a legitimate and proper State expense* incurred for *general State purposes* and *should* be wholly borne by the State.'' (Italics supplied.)

In Section seven it is further recognized that certain counties of the State and/or special road and bridge or other special taxing districts of such counties have ''*advanced and contributed* and *paid to the State Road Department varying sums of money to be used and expended by said State Road Department in the construction and building of State roads theretofore authorized and/or designated by the Legislature of the State of Florida as State projects.*'' (Italics ours.) It is further recognized in the provisions of section seven of the Act that certain counties

of the State of Florida and/or special road and bridge or other special taxing districts of said counties have paid or expended or caused to have been paid or expended varying *sums of money in the construction and building of certain roads that were at the* time of the passage of the Act *State Roads,* and theretofore designated *as State roads by the Legislature of the State of Florida,* "and that all such moneys have been and are being expended, furnished, advanced, contributed or paid out on account of expenses, to and for the general benefit of the *State* and *should* be *returned and repaid to each county to the amount that such county and/or any special road and bridge district or* other taxing districts thereof have *advanced or expended in the construction of the same.*" (Italics supplied.)

In Section 8 of the Act provision is made for the ascertainment of the amount of money furnished, advanced, contributed, paid out or expended by the several counties and/or special road and bridge districts or other taxing districts of such counties in the building and construction of roads designated as State Roads at the time of the passage of the Act. This to be done by the Chairman and Auditor of the State Road Department and certified by them to the State Comptroller to be by him *audited* and *found correct* before it shall constitute a basis for the allocation and apportionment of the moneys to be derived from the Second Gas Tax, and from which disbursement shall be made to or for the benefit of the respective counties out of the "State Roads Distribution Fund" account. It is provided that the Comptroller shall each month draw his order on the Treasurer of the State of Florida for the full net amount of moneys then with the State Treasury in the "State Roads Distribution Fund" specifying the counties to which said money shall be *paid,* the amount to be *paid* to each county respectively which sums are apportioned *monthly* out of the said "State Roads Distribution Fund" account. It is further provided that said order of

the Comptroller shall be payable to the State Treasurer as *exofficio Treasurer* for the *counties participating in the funds.*

In Section eight it is further provided as follows:

"Whenever the *amount furnished, advanced, paid out contributed or expended by any county and/or special road and bridge or other special taxing districts of such county,* directly, or through the State Road Department, in the construction or building of such State roads, within such county has been returned to such county, such county shall continue to participate in the distribution of the three (3c) cents of the Second Gas Tax as provided for in Section 8 (b) of the Act, so that thereafter a sum equal to the sum provided to be returned to or for such county under this Act shall be monthly paid into the *State Road License Fund,* the same being monthly appropriated to the use of the *State Road Department for the construction within the County* of *State Roads* which were at the time of the passage of the Act designated and recognized by the State Road Department as being part of the *first, second and third preferential system of State roads.* These State roads to be built by the State Road Department as *State projects and undertakings* and that the funds shall be used by the *State Road Department* for such purpose and not otherwise, and the expense of constructing said roads is by the Act declared to be a *legitimate, proper State expense to be incurred for a general State purpose."*

It is observed further that whenever any county no longer participates under the provisions of the Act "in the *return* to or for it of *moneys contributed* for the construction of *State roads"* as provided in the Act and when the State roads which are at the time of the passage of this Act a part of the first, second and third preferential system of State roads within such county shall have been built, then and thereafter all funds derived from the Second Gas Tax theretofore allotted and appropriated to and for said county shall be transferred to the *State Road License Fund of the State of Florida* to be expended according to law.

This comparison of the provisions of Chapter 14575, and

14486, supra, construed in the case of Amos v. Mathews, supra, with the provisions of Chapter 15659 which we are considering in this case reveals a striking dissimilarity between them.

Under the laws considered in the Amos v. Mathews case the gas taxes levied were by the terms of the Acts to be used in paying bonds of counties and road and bridge districts, and we held in that case, if the gas tax was a State tax, it was invalid.

Under the law we are considering in the instant case there is nothing said regarding the use of the money to pay county and special road and bridge district bonds. The State revenue realized under the instant law is by the terms of the law to be used in reimbursing and paying certain counties and or special road and bridge, and other special taxing districts, for the construction of roads, and for *contributions made in the construction of roads which the Legislature* by virtue of its *Sovereign power* has taken over as *State Roads* and which the Legislature recognized as a moral obligation, which in justice, honor, equity and good conscience should be paid. The act then appropriates the State funds arising from the Second Gas Tax to pay this recognized State expense. The funds appropriated do not become county funds until they have been paid to the State Treasurer as *Ex-officio County Treasurer.*

Under the law as we have it in this case, the right of any county and/or road or bridge or other taxing district to participate in the money appropriated from funds derived through the Second Gas Tax is not dependent upon whether or not it has outstanding bonds issued for road purposes but the right to participate depends upon whether or not it has constructed or built roads which have since been taken over and designated by the Legislature of Florida as State Roads; and whether or not it has contributed, advanced or paid out moneys in the construction of State roads by the State Road Department. A county and/or

special road and bridge or other taxing district may have paid and retired its issue of bonds, if any it had, but if the money realized from the issue or from any other sources were used in constructing roads that have been taken over by the State or if it advanced the proceeds of such bond issue or any of its other funds to the State Road Department for the construction of roads designated as State roads such a county or special road and bridge district participates in the money appropriated to the extent of the money expended in the construction of, and contribution to the construction of State roads. Perhaps there are counties that have constructed roads now designated and taken over and used by the State as State roads, or counties and special road and bridge districts, which have advanced and contributed moneys for the construction of such roads, but that no bonds were issued for such purpose. Any such county and/or special road and bridge district participate in the distribution of the funds appropriated under this Act to the extent of their contribution to the construction of these State roads, although they never had *bond issues*.

From our study of Chapter 15659, Laws of Florida, (House Bill 65-X) Acts of 1931, we think it clearly appears that the primary purpose and intent of the Legislature in providing for the Second Gas Tax and in the appropriation of the funds derived from it, was *not* to pay in whole or in part the principal and interest of the bonds of political subdivisions of the State, *but* to provide for the reimbursement of counties and special road and bridge districts or other taxing districts for moneys expended and/or contributed by them in the construction and building of roads which the State by Acts of the Legislature had designated and taken over as State roads. We are of the opinion that the decision of this Court in the case of Amos v. Mathews, is not decisive of this case. Appellee very strongly relies upon several previous decisions of this court to sustain his contention that the levy of the Second Gas Tax and the

appropriation of the proceeds thereof are void and violative of Sections 2 and 6, Article IX of the constitution quoted above. Among other cases he cites Cheney v. Jones, 14 Fla. 587, Advisory Opinion to Governor, 94 Fla. 964, 114 So. 855; State vs. Green, 95 Fla. 117, 116 So. 66.

In the case of Cheney vs. Jones, supra, this Court was considering an act of the Legislature of 1873 authorizing a State bond issue for certain purposes, among them being that of using the proceeds of certain of the bonds to pay debts incurred in the future. And we held that the issuance of bonds the proceeds of which were to pay debts for current expenses accruing in the future was contrary to the provisions of sections 2 and 7 of Article XII of the constitution of 1868. These constitutional provisions being substantially the same as sections 2 and 6 of Article IX of the present constitution. In the case of Cheney vs. Jones the court was considering strictly a State bond issue and the tax to pay the principal and interest thereon.

In the Advisory Opinion to the Governor, supra, we held that the law authorizing the State Road Department to borrow money to carry out its annual budgets was invalid in that it violated Section 6 of Article IX of the Constitution of the State. In this Advisory Opinion to the Governor we were considering the authority of the State or its agencies to borrow money upon promises to repay in the future and held "that provisions for raising revenue sufficient to defray the expenses of the State for each fiscal year shall be made by the Legislature by means other than *borrowing money* by State bonds or *promises* of the State to pay the amount *borrowed* in the future." (Italics supplied.)

In the case of State vs. Green, supra, the statute attempted to acquire a road for a consideration not legally ascertained, and to obligate the State to make future payments in violation of the intendments of section 6 of Article IX of the Constitution. In Martin vs. Dade Muck Land Co., 95 Fla. 530, 116 So. 449, the statute then being con-

sidered purported to authorize appropriation of State funds and to obligate the State to pay the taxes on lands held by the trustees of the Internal Improvement Fund, which taxes were levied to pay district drainage bonds and also to authorize the appropriation of State funds to be used by the trustees of the Internal Improvement Fund to buy in land at tax sales, the appropriation in either case to be used directly to pay district drainage bonds. Such provision of the statute violated the intent and purpose of Section 6, Article IX of the constitution.

We might say also in the Martin vs. Dade Muck Land Co. case, these appropriations were being made without the State having received anything of benefit or value in return.

In the instant case we have before us a statute making appropriation of State funds for a purpose radically different from those provided in the statutes considered by us in the cases above referred to.

In Chapter 15659, Laws of 1931, (House Bill 65-X) we are considering a statute levying a tax and making appropriation of the moneys derived therefrom for a general public purpose, i. e. to pay for State roads constructed by counties, and special road and bridge districts to reimburse counties and taxing districts for moneys advanced in construction of State roads; and lastly, to continue in such counties the building of State roads on the first, second and third preferential system of State roads: There is nothing in the Act obligating the State to pay principal and interest on bonds of any kind. There is nothing to show any recognition by the State that it is in any way obligated to pay bonds of any kind.

That some of the moneys appropriated to pay and reimburse counties and/or special road and bridge or other districts will be used by the Board of Administration, a county fiscal agency of the participating counties, to pay the interest and principal and to provide for the sinking

fund to take care of the principal of county and district bonded indebtedness, does *not* by any means affect the validity of the Act, the levy of the tax or the appropriation of the funds. The provisions of Sections 2 and 6 of Article IX of the constitution are not contravened thereby.

The next proposition for our consideration is whether or not under the constitution of Florida the Legislature can by its enactment provide for the reimbursement to counties and/or special road and bridge or other special taxing districts for money expended on roads constructed by such counties and/or special road and bridge and other taxing districts and for moneys contributed and advanced by such counties and/or districts in the construction of roads which at the passage of the Act had been designated and taken over by the State as State roads.

Counsel for the appellee in their brief admit that the building of roads is a public function. That the Legislature has the power if it sees fit to take over the building and maintenance of all roads of the State; and further that should the Legislature see fit to exercise the power it admittedly has then under the provision of Section 2, of Article IX of the State Constitution the legislature may raise revenue sufficient to build such roads; because, in so doing, the Legislature will be raising revenue to defray State expenses.

However it is contended by the appellee that the Legislature of the State of Florida cannot legally determine and declare that the moneys expended, advanced, furnished, contributed and paid by counties and road and bridge districts in the construction of roads now designated and taken over as State roads were, are and will be advanced in the performance of a State function and should be paid back to the counties and/or districts even though the Legislature has by laws legally enacted, taken over and assumed plenary ownership, dominion and control of such roads as State roads.

It is contended by the appellee that because the roads taken over from counties and special road and bridge and other taxing districts thereof were voluntarily built by such political subdivisions as county projects, the State cannot under the constitution reimburse them for the moneys spent even though it has through the Legislature exercised its sovereign power and assumed plenary ownership and control over such roads. Counsel for appellee in their brief quote from the opinion of this court in the case of Amos v. Mathews, supra, the following excerpt found on page 317 (text) 126 So.:

"Counties and districts could have refrained but they did not. The Legislature merely authorized, it did not compel. So each of the counties and districts of its own choice took the necessary steps etc., upon the ground that the construction of the roads in question constitute a county or district purpose, which it was, although the same construction projects might have been accomplished by the State as a State purpose. * * * . Construction of these roads however as local projects have been completed and that transaction is at an end."

This excerpt is taken from the portion of the text of the opinion prepared by Mr. Justice Strum wherein he was discussing the character of the obligations, i. e., county and road and bridge district bonds the payment of which was to be made with the moneys realized from the Second and Third gas tax. This is shown from a further excerpt from Mr. Justice Strum's opinion quoted in appellee's brief as being from page 319 (text) 126 So. as follows:

"Here the counties and districts by their voluntary acts have fixed the *character of the obligations* and placed them in a field of taxation that the State cannot enter by the levy of State taxes."

The matter of paying or reimbursing the counties for the moneys expended and advanced by such counties and taxing districts upon and for the construction of roads, which were subsequently designated and taken over as State roads, was not before the Court in the case of Amos v.

Mathews. However it was recognized by court that the purchasing of State roads was a legitimate expense. In the sixth headnote to the opinion the Court gives its expression touching the situation in the following words;

"The purpose of the second and third gas taxes levied by Chapter 14575 Acts of 1929 (Senate Bill 5) is not to pay the expenses of *constructing* or *purchasing* State roads but to *pay off* existing county and district bonds." (Italics supplied.)

If the Legislature can purchase a State road from private parties and make appropriation of money to pay the expense of such purchase, why can it not upon taking over for State purposes roads originally built as county and district projects with money advanced by such political subdivisions, properly and legally declare that reimbursement should be made and appropriate funds for such purpose. Of course the obligation of the State to reimburse its political subdivisions is not a *contractual obligation* such as may be sued upon and judgment obtained thereon; but it is a moral obligation, one which in equity and justice should and may be paid if the Legislature sees fit. If the Legislature of the State of Florida should determine that the Leon County Court House was needed for State office purposes, and by enactment of the Legislature should take it over for such purposes, would it not be legal and proper for the enactment to appropriate State funds to reimburse Leon county for the money it had expended in the construction of its Court House? We think it would. By the same token cannot the Legislature either at the time of designating and taking over county and district roads as State roads, or afterwards, declare they have been and are being taken over for a general State and public purpose and make appropriations to reimburse such counties and their districts in whole and in part?

If the State had authority to build these roads de novo, or to build State roads paralleling these county and district

projects, and appropriate funds to pay for such new construction, why should it not have the authority to levy taxes and appropriate the proceeds of the same to reimburse and pay to the counties the moneys expended and furnished in the construction of the roads so taken? We have before us this proposition: The sovereign State dealing with its political subdivisions has exercised its right to "take over" the exclusive title, control, possession and dominion of property built and constructed wholly or in part with county and district funds; and the Legislature has declared that this has been done and has further declared that the counties should be reimbursed for the property, and has levied a tax and made an appropriation of moneys to carry out its determination. Is there any inhibition in our Constitution against this? In re Advisory Opinion, 98 Fla. 843, 124 So. 728, we had occasion to pass on a principle of law strikingly analogous to the principle of law here involved. The law being considered in Advisory Opinion, supra, was Chapter 14533 Laws of Florida, Acts 1929, wherein the Legislature in consideration of the fact that one, Eugene Hawkins, had served the State of Florida for many years in divers capacities as an employee and as an attache of the Legislature, and was in destitute circumstances; enacted a law awarding to said Hawkins a special pension for his life in the sum of $40.00 per month, and making appropriation of $480.00 per annum from the general revenue of the State to provide for the payment of the same. In this opinion the allotment of the pension and the appropriation for its payment was upheld as being lawfully allowed and as being a *legitimate expense* under Section 2, Article IX of the State constitution, which provides:

"The Legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year," etc.

It seems to be the contention of the appellee in the brief

filed that there can be no analogy between the authority of the Legislature to award and provide for the payment of State pensions to civilians who have served the State in the past, and the authority of the State to provide revenue to reimburse counties and road and bridge districts for State roads built by them or which were built in whole or in part with funds contributed by them. It is further contended that the treating of any money spent by counties on the roads in question or contributed by counties for the construction of such roads as being furnished advanced, contributed or paid for State purposes, operates to make, the amount so spent and contributed a loan to the State, which the State is now attempting to acknowledge and repay. Both these contentions are untenable. In the Hawkins case we held that the provision allotting the pension for past services and appropriating money for the payment thereof, was lawful, and was warranted under the provisions of Section 6, Article IX of the constitution. If past services of an employee of the State who had become destitute, can, under the tax and revenue provisions of the constitution authorize the legislature to grant relief and make appropriation for the payment thereof in monthly installments; why has not the Legislature the same authority under the Constitution to recognize its moral and equitable obligation to reimburse any of its counties for funds advanced and expended by them in constructing roads, which the State has by virtue of its sovereignty taken over as State roads? As we have already said there is a striking analogy between legal principle involved in the Hawkins pension case, and that involved in the case at bar.

Chapter 15659, Acts of 1931, when properly interpreted does not in any way undertake to treat the amounts expended and advanced or contributed by counties and/or road and bridge districts, for the construction of roads subsequently taken over by the State, as an advance or loan to the State, constituting a contractual obligation upon the

part of the State to repay. In this act the Legislature only recognized and declared, that the amounts expended, advanced, furnished, contributed by such political subdivisions of the State for the construction and building of the State roads was for a general public purpose benefiting all the State, was a legitimate proper expense incurred for a general and public purpose and should be wholly borne by the State of Florida; and providing for the raising of revenue to carry out its announced determination. There is no expression in the law, recognizing any contractual liability upon the part of the State. Any future sessions of the Legislature may change the program set forth in this act carrying out the policy of the Legislature of 1931, by repealing the law providing for the Second Gas Tax or passing a law appropriating the revenue derived from it to other State purposes.

The Legislature of the State of Florida has the power and authority to declare that moneys expended by counties and/or special road and bridge districts therein in the construction of roads, or furnished and contributed by the State in the construction of roads taken over by the State is a proper expense to be borne by the State, and to levy taxes and appropriate the proceeds, to pay such amount, upon moral and equitable considerations and as obligations of justice and honor, as distinguished from legal "contractual" obligations. The power to ascertain and determine the obligations within this class being entirely political and legislative. United States vs. Realty Co., 163 U. S. 427, 41 L. Ed. 215; Guthrie National Bank vs. City of Guthrie, 173 U. S. 528, 43 L. Ed. 796; Knights vs. James Jackson, Treasurer and Receiver General, 260 U. S. 12, 67 L. Ed. 102; Mitchell vs. Lowden (Ill.) 123 N. E. 566.

This principle is recognized in State ex rel. Wailes vs. Croom, Comptroller, 62 Fla. 284, 57 So. 420.

In the case of Mitchell vs. Lowden, Supra, the Supreme Court of Illinois was considering an act of the Legislature

of that State entitled An Act in Relation to the Construction by the State of Illinois of a State-wide system of durable hard surfaced roads upon public highways of the State and to provide the means to pay the cost thereof by the issue of bonds.

Under Section 10 of the act, authority was given the Department of Public Works to reimburse counties for so much of the roads as may have been built by them. In construing the provision of the act authorizing that counties be reimbursed, the Court said:

"Laws of 1917, p. 696, providing for a State wide system of hard surfaced roads, authorized a $60,000,000.00 bond issue, which provided in Section 10, that the department of public works and buildings, to which the work is confided, may make use of any paved road which may have been constructed by any county, and in such case shall allot to the county a sum of money equal to the actual cost of such paved road, is not invalid as violating Const. Art. 4, Sec. 20, prohibiting the assumption of debts, or Article 9, Sec. 1, declaring that the General Assembly shall have no power to release any County from its proportionate share of taxes levied for State purposes."

In the text of this opinion, the Court in discussing the proposition just quoted, says:

"The State assumes no debt but pays cash for what it purchases, the county may use the money to construct and improve its roads or at its option, in payment of its bonds issued to construct or improve State aid roads."

In the case of Cheney v. Jones, Supra, we said

"There is no limitation of the power of the State Legislature as to the amount and objects of taxation unless there are restrictions expressed or necessarily implied in the language of the Constitution."

"The Legislature has wide, if not plenary discretion in the apportionment and application of the proceeds of a State tax, except as restrained by the Constitution.' Amos v. Mathews, Supra. See also Amos v. Gunn, 84 Fla. 288, 94 So. 615.

"The State possesses, as an attribute of sovereignty,

the inherent power to impose all taxes not expressly or by clear implication inhibited by the State or Federal Constitutions.'' Amos. v. Mathews, Supra.

We might, if necessary, cite and quote from the decisions of many other jurisdictions to sustain our position that the State may recognize and authorize the payments of demands or obligations based upon purely equitable and moral considerations, as distinguished from contractual obligations, but we deem it unnecessary to do so. We might also quote and cite from other jurisdictions as to the power of the Legislature of the State, to determine what is a State expense, and to impose a tax sufficient to meet such expense when not expressly inhibited by the Constitution, but the decisions of this court, some of which we have already cited and quoted are, we think, sufficient.

We are of the opinion that the provisions of Chapter 15659, Laws of Florida, (House Bill 65X) Acts of 1931, providing for the levy of the Second Gas Tax, and appropriating the moneys realized therefrom, to the paying and reimbursing of counties and/or special road and bridge, or other taxing districts, for moneys by them expended upon, and advanced in the construction of roads, which, at the time of the passage of the act, had been or were taken over and designated as State roads, are not violative of either Section 2, Section 3, Section 4, or Section 6, of Article IX of the Constitution of Florida.

It is contended next, in the bill of complaint, that the appropriations of the proceeds derived from the Second Gasoline Tax is not sufficiently definite and certain to meet the requirements of Article IX of the Constitution of the State, and also that the law provides a continuing appropriation.

Under the provisions of the Act, the amounts expended and contributed by each county and/or Special road and bridge or other taxing district therein, is to be ascertained by the Chairman and Auditor of the State Road Depart-

ment and certified to the State Comptroller who is to *audit* the certified statements of expenditures, and find them correct, in order that there be a basis for the apportionment of the funds to be appropriated. Then it is definitely provided in the act that the Second Gas Tax, apportioned to the Counties, one cent per gallon on the basis of total area, one cent per gallon on the basis of total population, and one cent per gallon on the basis of the advances and contribution made by the respective counties to the cost of existing State roads, shall be paid into the "State Roads Distribution Fund" and appropriated and paid *monthly* to each *County* upon the basis of the above apportionment.

We think the provisions for the appropriation of the funds is sufficiently definite and certain. The apportionment of the three cents tax known as the second gas tax is made monthly on a definite basis and monthly appropriation is made for the apportionment of the tax to the respective counties participating under the law. The Legislature has plenary control over county funds and may require the devotion thereof to any lawful use. We held this in upholding Chapter 14486, Laws of Florida, Acts of 1929, which provided for the Board of Administration to receive and disburse money raised from county taxes to the payment of interest and principal on county and road and bridge district bonds.

This principle has been recognized in previous decisions of this Court. See Board of County Coms. of Duval County vs. City of Jacksonville, 36 Fla. 196, 18 So. 339; Stewart vs. DeLand, 71 Fla. 158, 71 So. 42, text 490; State ex rel. Atty-Gen'l vs. Tyler, 95 Fla. 811, 116 So. 760. We think the appropriation as provided in the Act is sufficiently definite appropriating a proportionate part of a fixed tax payable monthly to each county which is to be reimbursed under the Act. It will be noted that the basis of the appropriation in the instant case is officially determined and fixed by the Comptroller of the State. In the case of State

v. Green, supra, the value of the roads proposed to be purchased under the law then being considered was to be fixed by private engineers and the appropriation was to extend over a period of years. The case at bar has the basis of appropriation definitely and officially determined.

Appellee further objects that the appropriation as provided in the law is a continuing appropriation. Even if it may be held to be a continuing appropriation, it would not be invalid. In former decisions of this court, laws providing for continuing appropriations have been upheld. In Amos v. Mosley, 74 Fla. 555, 77 So. 619, we said with respect to section 2, Article IX of the Constitution:

"We fail to find in this provision of the constitution any inhibition on the power of the Legislature to make continuing appropriation, and the power of the Legislature to do this having been sustained in the case of State vs. Southern Land and Timber Co., (45 Fla. 374, 33 So. 999) it disposes of this contention."

The fact also that all or a part of the consideration recognized in this law was received by the State in the past as distinguished from the present or future does not affect the Legislative power to levy taxes and make appropriation to provide for the reimbursement thereof. See In re Advisory Opinion, 98 Fla. 843, 124 So. 728 (the Hawkins Advisory Opinion). New York Life Ins. Co. vs. Coms. of Coyahoga County, 106 Fed. 123; U. S. vs. Realty Co., (supra). We do not think the appropriations provided for in the law under consideration are violative of the provisions of the State constitution governing the powers of the legislature to make them.

It is next contended that Chapter 15659, Laws of Florida, (supra) and its provisions regarding the levy and distribution of the second gas tax are invalid because the Act denies to the appellee the equal protection of the law and deprives him of his property without due process of law in violation of Section 12 of the Declaration of Rights,

Constitution of Florida and the Fourteenth Amendment of the Constitution of the United States. Appellee plants this contention upon the basis fixed therein for the apportionment and allotment of the second gas tax to the participating counties. As we have already noticed one cent of the second gas tax is apportioned to the credit of the several counties on the basis of the *area* of said counties, that is, in proportion that the area of a county may bear to the area of all the counties, one cent of said second gas tax apportioned on the basis *of the population* of the several counties, that is, in proportion that the population of a county shall bear to the total population of the State; and one cent of said tax apportioned to the credit of the several counties on the basis of *contribution* which had been made by the several counties etc. to the construction of roads.

Section 1 of Article IX of the constitution provides that the Legislature shall provide for a *uniform rate* of taxation. It is claimed that the plan for the apportionment of the second gas tax is violative of this provision of the constitution. It will be noted that the rate of taxation is the same throughout the State. It may be that in the levy of this tax the State will secure more money from some counties than from others because more gasoline is sold in the more populous counties. However this is true regarding any tax levied for State purposes, either ad valorem or excise. But the mere fact that larger sums of money for State tax are collected from some counties than from others, does not require that the State appropriate it for State purposes in counties in proportion to the amount of State tax collected in such counties. If that were the case, many of the State institutions would fail to have the necessary funds for their support. The second gas tax is, as already been held in this opinion, a State tax, and the revenue derived therefrom is by the terms of the Act appropriated for a State purpose, i. e. to repay or reimburse counties and

special road and bridge districts for moneys expended by them on State roads. The legislature, in the exercise of its power, has determined that the second gas tax at three cents per gallon be appropriated and distributed as we have already observed. This basis of distribution of the second gas tax is not entirely without statutory precedent. See section 1145, Compiled General Laws; section 889 Revised General Statutes; where the proceeds of license tax on express companies is distributed to counties according to assessed valuation.

Section 1238 Compiled General Laws, where provision is made that tax on railroad. rolling stock shall be distributed to counties according to track mileage regardless of situs of the property, and a number of other statutes where a state tax is distributed to counties on similar bases. Another precedent for the distribution of the second gas tax, as provided in the Act is the method adopted by Congress for the distribution and appropriation of money by the Federal-State Aid Highways Act, 42 Statute at Large, 217, 23 U. S. C. A. sec. 21. In this Act the basis of the distribution of Federal funds to aid States in road construction is:

"One third in ratio to the *area* of the State, one third in ratio which the *population* of the State bears to the *population* of all the States, etc., one third in the ratio of the *mileage of rural delivery routes and star routes in each State* bears to the total of such mileage in all the States."

It will be observed that the provisions of the Act, for the distribution of the second gas tax is patterned after the Federal plan of distribution of Federal aid money to States as nearly as can be. The reasonableness and the classification of the distribution or the basis for distribution for the second gas tax was for the legislature to fix and determine, and we do not find that it, in fixing the basis for a distribution violated any of the constitutional provisions of the State, nor of the Fourteenth Amendment of the U. S.

Neither do we find that any of the constitutional rights of the Appellee have been violated under the provisions of this Act.

Lastly, we will consider whether or not Chapter 15659, Laws of Florida, 1929, embraces more than one subject, and whether or not the subject is briefly stated in the title to the Act.

The bill of complaint alleges that the Act complained of is void and of no effect, because it embraces more than one subject and therefore violates section 16, Article III of the constitution of the State of Florida.

Section 16, Article III of the constitution provides as follows:

"Each law enacted in the Legislature shall embrace but *one* subject and matter properly connected therewith, which subject must be briefly stated in the title, etc."

Counsel contends that there is a multiplicity of subjects embraced in the Act,—we are called upon to consider in the case at bar.

An examination of the title of the Act reveals that the general subject of the law is taxation, particularly taxation of gasoline and other petroleum products for the purpose of raising revenue to meet State expenses. It is unnecessary to again incorporate the title of the Act in this opinion. The title herein already quoted as also the body of the Act, shows that it embraces but one *general subject,* that is the raising of revenue by levying a tax on gasoline dealers and on all gasoline and other petroleum products, *for State* purposes. The title of the Act and the Act itself contains other matters which we consider germane to the *general* subject. The duties of certain officers in making the levy of, and collecting the tax, as also in disbursing it, are germane to any tax measure. The purposes for which the revenue is to be used, or the State expense to which, it is to be applied, are also matters germane to the general subject of taxation. It is a matter of general knowledge in

the history of the gasoline tax laws in this State that the construction, repair and maintenance of roads and bridges are and have been so interrelated the one to the other that the provision for good roads has become the primary object of such taxation. Therefore in fixing the State expense to which the second gas tax is to be applied, the declaration that certain roads have become and are State property; and the building, construction of the same State functions and a recognition of the expenditures and advances made by the political subdivisions of the State, in such construction of State roads, is, we hold, germane to the general subject, and that the sections of Chapter 15659 dealing with this phase of the law are properly connected with the general subject of the Act.

The title of the Act sufficiently expresses the general subject being dealt with in the Act and matters connected with or germane to this general subject. The Act contains no other distinct and incongruous subject or matters, and the title is not misleading. See State ex rel. Moody v. Bryan, 50 Fla. 293, 39 So. 920; Fine v. Moran, 74 Fla. 417, 77 So. 539; State vs. Bethea, 61 Fla. 60, 55 So. 550; Butler v. Perry, 67 Fla. 405, 66 So. 150; International Shoe Co. v. Shartel, 279 U. S. 429, 73 L. Ed. 781.

Both the title and the body of the Act contain only matters that are logically and naturally connected with the *general* subject of the Act, and therefore the law is not violative of Section 16, Article III, constitution.

We wish to commend the counsel for both the appellants and the appellee for their thoroughness and labor in furnishing the court with full, complete and able briefs touching each question presented by the record. These briefs have been of great assistance to the Court.

We are of the opinion that Chapter 15659, Laws of Florida, Acts of 1931, is a valid legislative enactment. That it is not violative of any provisions of constitution as alleged in the bill of complaint, and that the court below should

have sustained the demurrer to the bill and should have denied the motion for temporary restraining order.

The orders appealed from are reversed and the cause is remanded with directions to the court below to sustain the demurrer to the bill of complaint and to enter its order dissolving the temporary injunction granted in the cause.

WHITFIELD AND TERRELL, J.J., concur.

BROWN, J., concurs in the conclusion.

BUFORD, C.J., AND ELLIS, J., dissent.

WHITFIELD, J., concurring:—Even if this is not an unauthorized suit against the State, (Hampton v. Board, 90 Fla. 88, 105 So. 323) and a citizen taxpayer, without any direct property interest in the premises, has a right by injunction (Wilson v. Shaw, 204 U. S. 24, 27 Sup. Ct. 233, 51 L. Ed. 351) to litigate the validity of State excise taxes levied and appropriated by statute to the counties for a State expense that is authorized by statute and not forbidden by the constitution, the enactment is not invalid.

Chapter 15659, Acts of 1931, is a duly enacted statute (State v. Dillon, 42 Fla. 95, 28 So. 781; West v. State, 50 Fla. 154, 39 So. 412; State v. Hocker, 36 Fla. 358, 18 So. 767; State v. Brown, 20 Fla. 407) with a legally sufficient and not misleading title (Amos v. Mathews, 99 Fla. 1, 126 So. 308; International Shoe Co. v. Shartel, 279 U. S. 429, 49 Sup. Ct. 80, 73 L. Ed. 781). It levies an excise tax not to pay county and district bonds, but for State expenses in reimbursing counties and districts for contributions and expenditures made by them for the construction of roads that have by statute been made State roads for general State purposes and benefits, the cost of such construction being by the statute specifically made a State expense. The statute does not levy a tax for county purposes, and does not require the proceeds of any tax to be used in paying county and district bonds as did Chapter 14575, Acts of 1929, considered in Amos v. Mathews, 99 Fla. 1, 126 So. 308. The language of Chapter 15659 shows its obvious in-

tent and purpose are to provide an excise tax fund to pay, as a current State expense, the cost of constructing roads taken for State purposes and the construction thereof made a State expense, the roads when taken by the State "become the property of the State."

The command of section 2, Article IX, constitution, that "the legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year," "includes such expenditures as may be authorized by the legislature and which are not prohibited by the constitution." Cheney v. Jones, 14 Fla. 587, 612. The "Second Gas Tax" levied by Chapter 15659 is for a current State expense, and the levy of the tax and its allocation and disbursement as provided, continue only while authorized by statute and no longer.

"The construction and maintenance of State roads are among the current expenses of the State, to defray which the Constitution commands the Legislature to provide for raising sufficient revenue for each fiscal year." In re: Advisory Opinion to Governor, 94 Fla. 967, 114 So. 850.

"The legislature exercises plenary control over public highways." Co. Coms. v. City of Jacksonville, 36 Fla. 196, 18 So. 339; State ex rel. Luning v. Johnson, 71 Fla. 363, 72 So. 477; Stewart v. DeLand-Lake Helen Special Road and Bridge Dist. in Volusia County, 71 Fla. 158, 71 So. 42.

Modern transportation requires unified systems of improved State highways in lieu of separate county systems of public roads; and in providing State highways there is economy in using county and district roads when practicable. In the exercise of its sovereign power, the State has taken over county roads for general State purposes; and, of its own volition, upon considerations of "moral and honorable obligation" and on "general principles of right and justice (U. S. v. Realty Co., 163 U. S. 427, 440, 16 Sup. Ct. 1120, 41 L. Ed. 215), in consideration of constructed roads taken over by the State for State purposes, levies by

Chapter 15659, an excise tax designated as "Second Gas Tax" to be paid into the "State Roads Distribution Fund," as a State fund for State purposes and expenses. The statute primarily appropriates such fund to the counties, not to pay county or district bonds, but as a sovereign recompense to the counties and the road districts therein for contributions and expenditures made by them respectively for the construction under statutory authority, of roads that have been by statute made a part of the State system of highways, such road construction being by the statute expressly made a State expense for a State purpose and general State benefit; the roads when taken over become "the property of the State." The fact that the roads taken over by the State had under statutory authority been constructed as a county or a district purpose and expense, does not affect the power of the legislature by statute to make such previous construction of the roads a current State expense. Providing public roads as a State expense is not forbidden by the constitution, and the legislature has dominant authority in the premises. See State v. Brevard County, 98 Fla. 226, 126 So. 353; Geo. Lewis v. Leon Co., 91 Fla. 118, 107 So. 146; State ex rel. v. Johnson, *supra*. Amos v. Mathews, *supra;* Jackson Lumber Co. v. Walton Co., 95 Fla. 632, 116 So. 771.

Neither the statutes authorizing the counties and districts to construct public roads with county or district bond funds, nor the statutes authorizing the counties and districts to contribute county and district bond funds to the construction of State roads, contain any provision obligating the State to recompense the counties and districts for contributions or expenditures made by the counties and districts for such road construction, and Chapter 15659 does not authorize the use of State funds to pay county or district bonds or debts, therefore it cannot be said that Chapter 15659 is a part of a legislative plan to use State funds

in violation of the intendments of section 6, Article IX of the constitution.

Statutes declare, designate and establish as State roads, enumerated lines of public roads which shall be and constitute the system of State roads in this State, and when located and constructed by the State Road Department shall become and be the property of the State. Sections 1637, 1657, et seq., Compiled General Laws, 1927. See also subsequent Amendatory Acts of 1929 and 1931.

In locating and constructing the designated State roads, many roads constructed by counties and districts under statutory authority have been incorporated into the State system of highways and under statutes such county and district roads have been appropriated and are being used for general State highway purposes.

Chapter 8553, Acts of 1921, authorized any county or any special road and bridge district in this State to aid in the construction of any State or State Aid Road, by contributions to the State Road Department of cash, bonds, time warrants, or other things of value, for use in the construction or maintenance of roads within the county, and authorized the State Road Department to accept and receive such aid and any such contributions and to dispose of and use the same in the construction or maintenance of any State or State Aid Road, Section 1662, Comp. Gen. Laws, 1927. Without the contributions and expenditures made by counties and districts in aid of road construction, the State could not have constructed its present system of highways extending into every section of the State.

Under Chapter 8553, Acts of 1921, held to be constitutional in Lewis v. Leon Co., 91 Fla. 118, 107 So. 146, the State has received very large contributions from counties and districts which have been used by the State Highway Department in constructing State highways, upon which gasoline motor vehicles are used by the public for the transportation of persons and property. If the State may

levy an excise tax on gasoline to construct and maintain State roads, it may also levy such a tax to reimburse, as a current State expense, contributions made by counties and districts to the State and used by the State for its highway purposes under a statute held to be valid authorizing the contributions.

If in authorizing, receiving and using such contributions for lawful State purposes, the State has not violated its constitution, the return of such contribution as a current State expense cannot violate the same constitution. Section 6, Article IX of the constitution in effect forbids the issue of State bonds for road construction and such organic section is held to forbid the borrowing of money by the State for such purposes. Advisory opinion, 94 Fla. 967, 114 So. 850. If authorizing, accepting and using county and district contributions for State road construction, is, under the statute, held to be valid in the Lewis-Leon County case, not a borrowing of money by the State in violation of section 6, Article IX, then reimbursements of such contributions as a current State expense cannot be a violation of the same section 6 of Article IX, when such reimbursements involve no promise or continuing obligation of the State.

Likewise if the State may construct or acquire highways as a current expense of the State, without violating the constitution, it cannot be a violation of the constitution to pay for the construction of roads as a current expense of the State when the roads are acquired by being taken over by the State after they had been constructed by counties and districts under statutory authority. If the State may acquire constructed highways, and pay for them as a current State expense, without violating the constitution, there appears to be no reason why the constitution is violated when the State by statute takes over constructed roads from counties and districts to be used for general State highway purposes and benefits, and provides for paying the cost of

constructing such roads from excise gasoline tax funds as a current expense of the State for value received.

The authority of the State to acquire public roads and to pay for them as a current State expense was recognized in State ex rel. v. Green, 95 Fla. 117, 116 So. 66, and in Amos vs. Mathews, 99 Fla. 1, 126 So. 208.

The organic requirement in section 2, Article IX, that "the legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year" does not prohibit continuing tax levies and appropriations for continuing State expenses. Amos v. Mosley, 74 Fla. 555, 77 So. 619. The intendment of the organic provision is that sufficient revenue shall be raised to defray all State expenses that are required by law to be paid in each fiscal year.

Section 2 of Article IX does not require every State expense to be fully paid each fiscal year; it merely commands the legislature to provide for raising revenue sufficient to defray the expense of the State "for each fiscal year," whatever the expenses may be for that year. If all such expenses are not paid in one fiscal year, they may by law be made a part of the State expenses for the next current year without violating the constitution, if no promise is made or obligation is assumed by or for the State to make continued or future payments. Statutes may limit State expenses to budgets for a fiscal year. See Hathaway v. Monroe, 97 Fla. 28, 119 So. 149.

The tax levy, the allocation of the collections and the specified appropriations made in the statute are a sufficient compliance with sections 3 and 4 of Article IX of the constitution, requiring tax levies to be made in pursuance of law and appropriations of State funds to be made by law. See State v. So. Land & Timber Co., 45 Fla. 374, 33 So. 999; Amos v. Mosley, 74 Fla. 555, 77 So. 619; State ex rel. v. Allen, 83 Fla. 214, 91 So. 104; Lainhart v. Catts, 73 Fla. 735, 75 So. 47.

The time when the roads that are taken over by the State were constructed, is immaterial where such construction is duly made a current State expense for a general State purpose. Such State expense is to be paid by current tax levies and appropriations while the legislature may so authorize and no longer, there being no promise or authority or permission to issue State obligations or to assume any obligations, or to use State funds directly or indirectly to pay any county or district bonds or other indebtedness. Section 20, Ch. 14486, expressly declares that the State is not obligated to pay any county or district bonds.

The declarations of section 7, Chapter 15659, as to the expense and benefits of public road construction in the State, are mere assertions of State policy, and are in no sense a promise to pay or the assumption of any county or district bonds or debts; nor do such declarations purport to create any contractual obligation of the State, and they have no efficacy to require a continuance of the tax levies and appropriations for reimbursements to the counties and districts any longer than statutes may authorize. The section declares that "the cost of constructing" certain roads, not the obligations of counties and road districts for constructing roads, to be a "State expense".

The reference in section 10, Chapter 15659, to funds derived from the sale of any county and district bonds and other evidences of county and district indebtedness turned over or delivered to the State as contributions to State road construction, is for the purpose of ascertaining what funds have under the Act of 1921, been contributed by the counties and districts to the construction of State roads, in order that the appropriations made by Chapter 15659 be applied to reimburse the counties and districts the amounts contributed by them respectively for State road construction. There is no authority or permission to use State funds to pay county or district bonds or indebtedness,

nor does Chapter 15659 contain any promise to pay or to make continuing appropriations. Section 8 of Chapter 14486, Acts of 1929, expressly declares that all bonds heretofore issued by any county or special road and bridge district for the construction of roads, shall remain obligations of said counties and districts respectively, and that each of said counties and districts shall be legally liable for the full amount of its bonds until paid. This enactment has not been repealed and remains in full force and effect. A repeal of the provision could not affect the binding obligations of county and district bonds that are legally outstanding. Nor would a repeal of the provision obligate the State to pay or to make continuing appropriations to pay any county or district bonds or other indebtedness.

The statutory disbursements to the counties for value received by the State, is the exercise of a sovereign State power, and may be made as provided by statute, the fund allocated being a State excise license tax fund and the counties and districts having no organic or contract rights in the premises, but only such rights as are conferred by the statute. This also accords with the last sentence of Section 11 Article IX, Constitution, as amended in 1930. Page 785-6 Acts 1929. The relation of the State to its counties and districts is sovereign governmental, not contractual or equality of rights. Counties and districts are subdivisions of the State, and under the statute are recipients of the State's voluntary recompense for contributions and expenditures made by them for constructing roads that by statute are made State highways; and their previous construction is by statute made a State benefit, purpose and expense. The statute defines the method by which the sums to be reimbursed shall be ascertained and authenticated by State officials. The administration of the Act is subject to appropriate judicial review. See Sparkman v. County Budget Comm., decided at this term.

The constitution requires a uniform and equal rate of

taxation, but it does not require uniformity and equality in disbursements of State funds for State expenses, 4 Cooley on Taxation, Section 1813. The State institutions and instrumentalities including highways are 'not uniformly located throughout the State. Statutes may determine the order and method of paying current expenses of the State, there being no organic regulations of the subject. The bases of allocations of reimbursements to the counties for a State expense predicated upon area, population and expenditures in constructing State roads, have reasonable relation to road construction, not to county road bonds. Section 9, Chapter 15659, relates to *county* funds to "be administered by the Board of Administration, as provided by law."

When State funds are duly paid for a legal State expense, the payments serve the State purpose and cease to be State funds, and become the property and funds of the payee; and if the payee is a county or a district, the payments received become county or district funds wholly distinct from State funds, and are to be used by the county or district as the law provides. See Jordan v. Duval County, 68 Fla. 48, 66 So. 298.

Payments made by the State to counties and districts for full consideration received by the State, become county and district funds as they would be the funds of any other payee in the payment of a legal State expense.

The statutes have converted public roads constructed by counties and districts into State roads for general State purposes, and Chapter 15659 has expressly made the cost of the construction of such roads as well as contributions made by counties and districts to the construction of State roads, a current State expense for a general State use and benefit. The expense is to be borne by the State only so long as statutes so provide. Such State expense is not forbidden by any organic provision, but is in accord with section 2, Article IX of the constitution. Appropriations to

reimburse counties and districts for contributions and expenditures made by them for the construction of public roads that are State roads, are not a direct, indirect or contingent use of State funds to pay county and district bonds, but such appropriations are for the payment for value received of a statutory State expense that is not forbidden by the constitution; therefore, such use of State funds is not a direct or indirect violation of the intendments of section 6 of Article IX of the constitution.

In State ex rel. v. Green, 95 Fla. 117, 116 So. 66, the value of the road proposed to be purchased was not to be duly ascertained and approved, and the Act attempted to obligate the State to make *future payments* in violation of the intendments of section 6 , Article IX, constitution.

In Amos v. Mathews, 99 Fla. 1, 126 So. 308, Chapter 14575, Acts of 1929, levied an excise tax on sales of gasoline called second and third gas tax for *county purposes,* the proceeds to ''be applied to the payment of interest and principal and/or sinking funds of indebtedness for road and bridge construction * contracted by each county respectively and by the special road and bridge districts in such county'', etc.

In this case Chapter 15659, Acts of 1931, levies an excise tax on sales of gasoline for *State purposes and expenses* in reimbursing counties and districts therein for contributions and expenditures made by them in constructing roads that have been duly made State roads for general State purposes and benefits.

In Martin v. Dade Muck Land Co., 95 Fla. 580, 116 So. 449, certain provisions of Chapter 12016, Acts of 1927, sought to authorize the appropriation of State funds to pay taxes levied upon lands not owned by the State, the proceeds of the tax levy to be used in paying district drainage bonds; and such provisions were held to be an indirect violation of the intent of section 6, Article IX, constitution. The State did not take over any public improvements that

had been paid for by the district, had not received any consideration for appropriations and the tax levy improvements were not made a State purpose or a State expense, therefore that case is essentially different from this, where the appropriation is not to pay taxes assessed to pay county or district bonds, but to pay for State Road construction.

Chapter 15659, Acts of 1931, levies State excise taxes and appropriates certain of the collections for the payment of State expenses that are expressly authorized by statute and not forbidden by the constitution. The statute provides for reimbursing the counties and districts for contributions and expenditures made for the construction of roads taken over by the State and does not authorize or permit the use of State funds to pay any bonds or debts, and contains no express or implied contract or promise to pay. It provides that all moneys credited to the counties to reimburse them when "paid to the State Treasurer as ex-officio County Treasurer shall be administered by the Board of Administration, as provided by law." Chapter 14486 Acts of 1929, declares that all county and district road bonds shall remain obligations of the counties and districts respectively until fully paid, and creates the Board of Administration and makes it a fiscal agent of the counties and districts for designated purposes. Amos v. Mathews, 99 Fla. 1, 126 So. 331. The State Treasurer as ex-officio county Treasurer and the Board of Administration administer funds *only* after they have been received by the counties and have become *county funds.* Chapters 14486 and 15659 may co-ordinate without directly, indirectly or contingently violating any provision of Article IX of the State constitution. See Knight v. Johnson, Treasurer, 260 U. S. 12, 43 Sup. Ct. 1, 67 L. Ed. 102.

TERRELL AND BROWN, J.J., AND CAMPBELL, Circuit Judge, concur.

ELLIS, J., dissenting:—Section 7 of Chapter 15659 Acts 1931, House Bill 65-X, declares that certain roads which

were built or which may hereafter be built by the State
Road Department as State Roads, or which were con-
structed or built by any county or special road and bridge
district, *were, are* and *will* be constructed as State projects
and the cost of construction is and will be a "legitimate,
proper state expense incurred for a general and state pur-
pose and should be wholly borne by the State of Florida."

The section also declares that the money raised by cer-
tain counties and road districts and expended in the con-
struction of roads that are now and heretofore designated
as state roads by the Legislature were moneys expended,
furnished, advanced, contributed or paid out on account
of "expenses of the State in construction and building of
said State roads to and for the general benefit of the State."

Those declarations are in direct conflict with the utter-
ances of this Court upon the subject and amount to an at-
tempted legislative reversal of the decisions of this Court by
which the validity of bonds issued by the counties and dis-
tricts to raise money for such purposes was upheld. I did
not agree with the majority of the members of the Court
in those decisions but hold that the issuing of such bonds
and the raising of the money by the counties and districts
for such purpose was not a county purpose but upon the
contrary was what the Legislature now declares it to be,
namely, an expense of the State for the general benefit and
"not for a county purpose and for no other purpose."

That view was maintained by me under the provisions of
the Constitution as it then existed and as the provisions in
relation to the subject now exist. See Lewis v. Leon Coun-
ty, 91 Fla. 118, 107 South. Rep. 146; Keggin v. Hills-
borough, 71 Fla. 356, 71 South. Rep. 372.

It has been many times pointed out as in the last cited
case that while the building and maintenance of roads is
a sovereign power and function of the State the policy of
the State, up to the establishment of the new system of
State Highways, had been to delegate the function of road

construction and maintenance to the counties and thus made that expense a county purpose. It was a method of distributing the burden which the construction and maintenance of highways creates. Therefore, obligations created by counties for that purpose were essentially county obligations whatever form those obligations took and justified a county tax for that purpose, it being for a county purpose and none other.

When the State designated a system of highways as State roads, took over the construction and maintenance of them and assumed title and ownership of them, such enterprise became exclusively a state expense. Such were the views I entertained. But this Court in the Lewis-Leon County case, *supra*, held that bonds issued by the County to aid in the construction of State Highways were county obligations for county purposes and no other purpose.

Now the statute, House Bill 65-X, Chapter 15659, Acts 1931, declares that money raised by the counties and road districts and *expended* for such purpose as well as its own county roads not included in the State system *were, are* and *will* be constructed as State projects.

So far as the statute operates prospectively, I find no objection to the proposition because it is within the power of the State to take over the function of road construction and maintenance in its entirety but so far as it relates to obligations incurred by the counties to discharge which taxes may be levied by counties for county purposes only under Sec. 5 Art. IX Const., and under which county bonds have been adjudged by this Court to be valid, I have difficulty in understanding how it can be held under authority of legislative fiat that the indebtedness incurred by the counties and the money expended for such purposes was incurred and expended for State projects, and that such expense ''is and will be a legitimate proper State expense for a general and State purpose and should be wholly borne by the State of Florida.''

Section 7 of the Act constitutes the major promise upon which the argument in support of the distribution of the second gas tax rests. I cannot concede that the Legislature has the power to declare a county obligation to discharge which a county tax was justified under the constitution which limits such taxes to county purposes and for no other purposes to be now, after such obligations have been declared by the courts to be valid county obligations, a "legitimate State expense for a general and State purpose and should be wholly borne by the State of Florida."

This question was thoroughly discussed by Mr. Justice Strum and concurred in by all the members of the Court in Amos v. Mathews, 99 Fla. 1, 126 South. Rep. 308.

There is no material difference between the State policy as outlined in Chapter 15659, Acts of 1931, House Bill 65-X, and that outlined by Chapters 14486—14575 Acts 1929, which were the subject of consideration in Amos v. Mathews, *supra.*

In the last analysis the act under consideration undertakes to disburse a State tax in payment of county and road and bridge district bonds, obligations incurred by the counties and districts in the performance of county functions and to discharge which the counties are empowered by Section 5 Art. IX of the Constitution to levy a tax and which the State by the Constitution is prohibited from levying a tax to discharge.

I also agree with Mr. CHIEF JUSTICE BUFORD that the act was never passed by the Legislature in the manner and according to the requirements prescribed by the Constitution.

BUFORD, C.J., concurs.

ON PETITION FOR REHEARING.

BROWN, J.—The act under review raises the following important question: Can the legislature, without conflicting with the constitution, levy and collect a State excise tax on the sale of gasoline for the purpose, so far as the

proceeds of such tax may annually go, of reimbursing the counties and special road and bridge districts for the moneys expended by them in the construction, or in aid of the construction, of public roads within such counties and districts, which roads had either theretofore been designated as State roads or were subsequently taken over by the State, and all of them now firmly welded into the State system of public highways? For the reasons so well stated in the able opinions of JUDGE CAMPBELL and MR. JUSTICE WHITFIELD, I think the legislature had this power, and I know of no provision in our constitution which would prevent its exercise.

It might seem from the language used in section 7 of chapter 15659, that it is in conflict with the previous holdings of this court that certain of these roads were constructed by the counties for county purposes, which they undoubtedly were. But this apparent conflict is more seeming than real, growing out of the *dual* character of public roads, which by their very nature serve local as well as general, county as well as State, purposes.

It is true, the counties constructed or aided in the construction of these roads as being for county purposes, and issued bonds and levied taxes to pay for them by virtue of statutes authorizing them so to do, which statutes were held valid under section 5 of Art. IX of the constitution which provides that the legislature may authorize the several counties to assess and impose taxes for ''county purposes,'' and ''for no other purposes.'' But this court held that the construction or improvement of a public road, located within and furnishing a public benefit to the particular county, might constitute a county purpose for that county within the meaning of the constitution, even though such road might also benefit the State and serve a State purpose, and that this rule would apply even as to roads which had been designated by the legislature as State roads and which would after construction become the property

of the State, Lewis v. Leon County, 91 Fla. 118, 107 So. 146;
Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116
So. 771. The constitution does not limit the power of the
legislature to authorizing the counties to impose taxes for
purposes which are *exclusively* county purposes. If it had
done so, we would have had practically no roads what-
ever in this State up to a few years ago. As was pointed
out in the above cited cases, the construction of a public
road within a county may constitute a dual purpose, that
is, it may constitute a county purpose in spite of the fact
that it may also serve a State purpose, which principle
was firmly imbedded in the history, the statutes, the judicial
decisions and the public policy of the State from its very
beginning.

Some of the earlier cases decided by this court illustrat-
ing the dual character and purpose of public roads and
certain other improvements, which were nevertheless held
to constitute legitimate county purposes, are: Cotten v.
County Commissioners of Leon County, 6 Fla. 610; Skinner
v. Henderson, 26 Fla. 121, 7 So. 464; Stockton v. Powell,
29 Fla. 1, 10 So. 688; Duval County v. Jacksonville, 36
Fla. 196, 18 So. 339; County Commissioners of Escambia
County v. Pilot Commissioners, 52 Fla. 197, 42 So. 697;
Jordan v. Duval County, 68 Fla. 48, 66 So. 298. One of
the most interesting of the above cited cases is that of
Stockton v. Powell, which dealt with a project which con-
stituted a *triune purpose*. That case involved the validity
of an act adopted in 1891 authorizing the county of Duval
to improve the navigation of the St. Johns River within
the boundaries of the county and to issue bonds for that
purpose. It appeared that the proposed improvements
served not only a county purpose, but also a State and
National purpose as well. The bill filed to enjoin the issu-
ance of the bonds alleged that the St. Johns River was a
navigable stream and public highway, running from its
source 200 miles South of Jacksonville through several

other counties and thence through Duval County to the Atlantic Ocean, affording the means of transportation for not only local, but also for interstate and foreign commerce; that the National government had spent and was spending large sums of money in improving the navigation of the river and to remove obstructions therefrom, and that the general control of the river for purposes of navigation and commerce was vested in and being exercised by the general government of the United States, whereas the commerce and business on the river confined within the limits of Duval County was small and of no great importance. Yet this court, in a well considered opinion written by Mr. Chief Justice Raney, held the statute constitutional, on the ground that, in spite of the fact that the improvement of the river would benefit State and foreign commerce, nevertheless the improvements were to be made on that part of the river situated in Duval County and afforded a means of travel and transport to the people of the county, and that so far as Duval County was concerned the legislative determination that the proposed improvements constituted a county purpose would not be disturbed by the courts; that to hold otherwise would be a usurpation by the courts of legislative functions. By the same reasoning, the court would have upheld the constitutionality of the statute if it had authorized the State to construct the proposed improvements at State expense to be paid for with funds raised by State taxation, for the improvements were of such a nature as to constitute a State as well as a county benefit.

Up to about ten or fifteen years ago, the only roads which the State had were county or district roads, constructed and maintained by the counties or special road districts, without State aid. The State Road Department was created in 1915, but was given very little power or resources until several years later. And yet throughout all this early period of county responsibility for road con-

struction and maintenance, this court always recognized the fact that the legislature retained and could exercise, when desired, a sovereign interest in and plenary control over all public highways in the State; and undoubtedly most of the more important roads which were constructed by the counties in those early days served a State as well as a county purpose. Even when the need for hard-surfaced highways began to be felt, the State for some years continued the policy of leaving the burden of furnishing them entirely upon the counties. Thus, in 1899, a general statute was adopted, authorizing the counties to raise money by bond issues, and to impose taxes to pay them, for the purpose of constructing paved, macadamized or other hard-surfaced roads, when approved by the legal voters of the county in an election held to determine their wishes in the premises. Under this statute many serviceable and important hard-surfaced roads were constructed by the counties at county expense with great benefit to the entire State. Surely these roads, while constituting a county purpose, did not constitute an exclusively county purpose. The dual purpose of public roads was further recognized by the Act of 1921, adopted after the establishment of the State Road Department, which authorized the counties to contribute to the construction of State or State aid roads within their respective boundaries. This act was held valid by this court in Lewis v. Leon County, supra, in which the previous decisions of this court bearing on the question were reviewed.

Thus we see that for many years the State saw fit to follow the policy of imposing the burden and cost of public road construction and maintenance entirely upon the counties and road districts. During this period the use of public roads was for the most part predominantly local. If a person desired to take a trip of any considerable distance, he used the railroads. Then came the general use of the automobile, and a marked increase in through or long dis-

tance traffic, and a strong public demand for improved hardsurfaced highways. The State then entered the field of road construction and maintenance, slowly at first, but very actively during the past six years. The State's constitutional right to construct and maintain public roads has never been seriously questioned. See Cooley on Taxation, section 204. For several years the State revenues were not equal to the task of constructing all the improved highways that were needed and eagerly desired by the counties, and by statute the State authorized and accepted aid from the counties, or such of them as saw fit to grant it, in the construction of highways within such counties which had been designated as State or State Aid roads. No one dreamed at that time that the State would ever make any reimbursement for such aid. Gradually the State revenues for road building were increased, and the need for county aid decreased. Meanwhile hard times came and the counties which had seen fit to construct or aid in the construction of roads which had been designated as State roads, or which after construction had been taken over by the State, began to feel very keenly the burden of the debts they had incurred in financing such construction.

Thus, beginning with county construction of all public roads at county or local expense, followed by State construction of some roads with county aid and the taking over by the State of many roads constructed by the counties, and latterly by a large amount of State construction without county aid, we have secured, to the benefit of the State and its people generally, as well as to the counties through which such State roads pass, an extensive, connected and co-ordinated system of State roads, which have become the property of the State, and under its exclusive management and control. This evolution has gone on before our very eyes and with legislative authority. It is a matter of common knowledge. What everybody knows, the courts are presumed to know. The increase in volume of general

or through traffic on these formerly county or locally built highways that have thus been taken over by the State has gone on to such an extent that such through traffic-interstate as well as intercounty—probably now largely predominates, in most counties, over the purely local or intracountry traffic. Thus, while the roads now forming the State system still serve local county purposes in the respective counties through which they pass, they also have come to serve a general and State purpose to such a marked degree as to render it reasonably within the purview of the legislative power to adopt as a public policy and to declare by statute, as they have done by the statute here under review, that these roads have become State roads, serving a State purpose, and that the counties should be reimbursed out of the proceeds of a State excise tax for the moneys they had expended in the construction, or in aid of the construction, of such roads so taken over by the State. The legislature has perhaps as much latitude in determining what constitutes a State purpose (Cheney v. Jones, 14 Fla. 587) as it has in determining what constitutes a county purpose, and as to the latter this court has several times held that it will not hold the legislative determination ineffectual unless the particular enactment violates some provision of the Constitution or "no legal or practical relations whatever to any county purpose." Jordan vs. Duval County, 68 Fla. 48, 66 So. 298; Stewart v. Special Road & Bridge Dist., 71 Fla. 158, 71 So. 42, and cases cited.

But when, under statutory authorization, the counties constructed these roads within their respective boundaries which were subsequently taken over by the State as a part of the State system, or when they contributed to the expense of constructing roads within their boundaries which had been designated by the legislature as State or State aid roads and which after construction became the property of the State, the counties were acting voluntarily for

their respective county purposes, and as to each county, *to the extent of its participation*, the construction work was for a county purpose, and the bonds which the respective counties issued for such purposes were strictly county bonds. There mere fact that the improvements thus constructed also ministered to the general welfare of the State, and have since been taken over by the State, and the further fact that the State itself might have done all this road construction in the first instance without county aid, if it had seen fit to do so, does not change the fundamental fact that the counties were at the time acting primarily for their own interests and for legitimate county purposes. Hence, by their action, the counties, under legislative authority, elected to and did establish the status of these road construction projects, *to the extent of their participation therein*, as *county projects, so far as the counties were concerned,* and the bonds issued by the counties to finance these projects were strictly and solely county obligations, for which the State was and is in no wise responsible. This was pointed out by Mr. JUSTICE STRUM in his very able and illuminating opinion in the case of Amos v. Mathews, 99 Fla. 1, 126 So. 308. Therefore, if the act here under consideration had said that such road building work done by the counties and districts constituted an *exclusively* State purpose, such an expost facto declaration would not only have been incorrect as a matter of fact, but it would also have been in conflict with our previous decisions, and entirely without legal effect upon the validity of the bonds thus issued by the counties and validated by the courts. Both the State and Federal Constitutions prohibit the passage of any law impairing the obligations of contracts. However, the act merely says that such road construction was and is for *a* State purpose, which it was and is, but, as we have seen, it was also for a county purpose as well, and justified county action in that behalf. Lewis v. Leon County, supra. It is the failure to recognize this duality of use

and purpose in the construction of public roads which had caused some confusion and difficulty in dealing with this subject. It necessarily follows, from what has been said, that, under sections 2 and 6 of Art. IX of the constitution, the State cannot levy State taxes for the purpose of paying, as a State expense, the bonds thus issued by the counties and road districts.

But the act here under review does not purport to levy a State tax and appropriate the proceeds for the purpose of paying county and district bonds. The distribution to the counties provided for by the act is not made on that basis. The act sets forth the appropriation or distribution to the counties of the proceeds of three cents of the excise tax, as provided for in this act, briefly as follows: One-third in proportion to area; one-third in proportion to population, and the remaining one-third in proportion to the amount expended by the several counties and road districts within such counties for the construction of roads within their respective boundaries which were then or thereafter made a part of the now existing State highway system. The controlling question presented is whether it was within the constitutional boundaries of the legislative power to make such an appropriation or distribution to the counties from funds raised by a State excise tax, particularly an excise tax on gasoline used generally as a motive power for travel and traffic over the public roads of the State.

Section 2 of Art. IX of the constitution says that the legislature ''shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year.'' But the legislature has, under the former decisions of this court, a wide latitude in determining what shall be a State expense. In Cheney v. Jones, 14 Fla. 587, this court said that this language ''includes such expenditures as may be authorized by the legislature and which are not prohibited by the constitution.'' There is nothing in the constitution that prohibits the legislature from adopting

as a State expense the appropriation to the counties of a portion of the proceeds of a State excise tax for the purposes and on the basis set forth in this act. Though these roads were constructed by the counties and districts for local purposes, they have, as above stated, in the course of events, since become parts of a co-ordinated State-wide system of highways, which the State had the power to have initially constructed at State expense, and the use of which has become more and more general, as compared with local, in its nature, and if the legislature deems it a wise public policy to now adopt this method of gradually re-imbursing the counties and districts for the amounts thus expended by them on such roads, as a State expense, there is in our opinion nothing in the constitution, for the reasons above pointed out, which would justify the courts in holding such policy unconstitutional and void, regardless of the wisdom *vel non* of such policy, and regardless of the use to which the moneys thus appropriated to the counties is put after the distribution thereof to the counties is completed and the amounts reimbursed have become county funds. If the allocation or appropriation to the counties for value thus received is valid, and the funds become valid county funds, then under authority of the case of Amos v. Mathews, supra, decided two years ago, the legislature has authority to require the application of such funds to the payment of county and district debts, whether evidenced by bonds, or otherwise, without conflicting with section 6 of Art. IX prohibiting the State from issuing bonds. In so doing *the State* does not use the funds to pay county bonds, and does not obligate itself in any way to pay any bonds or debts. There is nothing to prevent the legislature from changing the application of these county funds at any time to any other lawful county purpose, nor is there anything to prevent the legislature from discontinuing the tax, or the distribution of a portion thereof to the

counties or the application of the proceeds, at any time it sees fit.

In Cooley on Taxation, section 188, it is said:

"It is not inconsistent with this doctrine of judicial review that in every instance the highest consideration should be paid to the determination of the legislature that a tax should be laid. It is not lightly to be assumed that its members have come to the examination of the subject with any other than public motives, or that they have failed to give it due investigation or reflection. The presumption on the other hand must always be that they have considered it with honesty and fair purpose, and that their action is the result of their deliberate judgment. And with all these presumptions tending to support the legislative action, it would seem but reasonable and proper that the courts should support it when not clearly satisfied that an error has been committed. There is a presumption in favor of the validity of the tax. This is the general rule in constitutional law when the validity of legislation is involved, and it is applicable with peculiar force to the case of a legislative decision upon the purpose for which a tax may be laid, since there is no such thing as drawing a clear and definite line of distinction between purposes of a public and those of a private nature."

And in section 1813 of the same standard text book on taxation it is said:

"After taxes have been collected, their apportionment and distribution are largely regulated by statute.\*\*\*\*\*\* Where not regulated by the constitution, the legislature has a wide discretion as to the application of the proceeds of a State tax.\*\*\*\*\*\*\*\*If this discretion is unwisely exercised, the remedy is with the people, and not with the court."

The views herein above expressed are not, as we see it, in conflict with the decision or the opinion of this court in Amos v. Mathews, *supra,* in which opinion the writer concurred. The act here under review is essentially different from the act construed in the case of Amos v. Mathews.

The question, then, as to whether the State shall reim-

burse the counties and road districts for the cost of those roads constructed by them which the State has taken over and made a part of its general State road system, is a question of public policy, the determination of which falls within the broad domain of the legislative power, which may adopt such measures as it sees fit so long as it does not conflict with the provisions of the State or Federal constitutions. It might be observed that if these roads had been constructed and owned by private individuals, the State could not have taken them for public use without paying just compensation therefor. While the State can, without paying for them, take over roads from its political subdivisions which the latter have built at their own expense when the legislature deems it necessary to weld them into its State-wide system of highways, the use of the roads having become so general in its nature and the interest of the State therein having become so vital and predominant in character, the fact remains that there is nothing in the constitution, as we understand the provisions of that fundamental instrument, to prevent the legislature from reimbursing such subdivisions for the moneys they have heretofore spent in constructing such roads. The wisdom and fairness of such a policy is a question for the legislature, and not for the courts. If the public policy thus adopted is not or does not prove to be wise, the remedy lies with the people, through their legislative department. It is not within the province of the courts to set aside the legislative determination on grounds of wisdom or public policy so long as the constitution is not violated. While it is the highest duty of the courts to enforce the principles of the constitution, they should be careful not to invade the domain of the legislative department. Constitutional principles do not change, except as they may be altered by the people through constitutional conventions or by amendments made in the manner prescribed by the constitution. The constitution does not mean one thing yesterday or today and another

tomorrow. But while constitutional principles do not change, sometimes conditions do change. and new and different conditions arise, and new statutes are enacted to deal with them, and constitutional principles must be applied to such new statutes and conditions as they arise, fairly, intelligently and impartially. The principles of the constitution must be preserved at all hazards, in all their pristine vigor and purity, and the language in which they are expressed given its plain and obvious meaning and true intent, uninfluenced by any spirit of expediency or opportunism. Euclid v. Ambler Realty Co., 272 U. S. 365, 71 Law ed. 303. But in applying such principles to new or changed conditions, the courts should fearlessly face the facts—the actualities and realities of the situations and questions thus presented, and apply the principles of the constitution to them without any sacrifice whatever of such principles, and without any strained construction of the language in which those principles are expressed. We have endeavored to consider the questions here presented from the standpoint above outlined.

As to the question raised concerning the validity of the passage of the act through and by the legislature, under the decisions cited in the opinions of JUDGE CAMPBELL and MR. JUSTICE WHITFIELD, the majority of the court, including the writer, reached the conclusion that the act was constitutionally adopted and the petition for rehearing does not present any point in that connection which has not already been considered. See also in this connection 26 Am. and Eng. Encyc. of Law, 541-2; 36 Cyc. 955 and 25 R. C. L. 880.

For the reasons herein above given, as well as those stated in the opinions of JUDGE CAMPBELL and MR. JUSTICE WHITFIELD heretofore filed, we adhere to the conclusion heretofore arrived at that the act here in question is valid and constitutional, and the petition for rehearing is therefore denied.

Petition for rehearing denied.

WHITFIELD, AND TERRELL, J.J., AND CAMPBELL, Circuit Judge, concur.

BUFORD, C.J., AND ELLIS, J., dissent.