**SPESSARD L. HOLLAND, as Governor, et al., as and consti-
tuting the BOARD OF ADMINISTRATION, v. STATE
OF FLORIDA ex rel. W. C. GOSS.**

10 So. (2nd) 338 · Division B
October 6, 1942 Rehearing Denied November 12, 1942

J. Tom Watson, Attorney General, and D. Stuart Gillis, for appellants.

W. K. Whitfield, for appellee.

TERRELL, J.:

First National Bank of Fernandina secured a judgment against Special Road and Bridge District No. 17

of Palm Beach County predicated on bonds dated July 1, 1922, payable on designated maturity dates with interest coupons attached payable semi-annually at the rate of six per cent per annum.

The board of administration paid the principal and interest coupons up to the date of maturity but declined to pay interest after maturity and other costs incident to the judgment. Appellee secured the judgment by assignment and on his petition, alternative writ of mandamus was directed to appellants as respondents commanding them to pay the balance due on said judgments from gasoline and other funds held by them to the credit of Special Road and Bridge District Number 17. A motion to quash the alternative writ was denied and peremptory writ was awarded. Respondents appealed from the latter order.

The question presented is whether or not the Board of Administration may lawfully pay that part of the judgment in question represented by interest which accrued after maturity of the bonds and such other costs as accrued incident to securing the judgment including interest on the judgment from the date it was secured to the date of payment.

Appellants do not challenge the legal propriety of any of these amounts but they say they should be charged against and recovered from Special Road and Bridge District Number 17. They also contend that they are administering a state fund allocated to the payment of bonds and other obligations of counties and special road and bridge districts issued and outstanding prior to April 1, 1931, for the construction of State roads and that the act creating said fund

did not contemplate the payment of interest or other charges accruing after maturity of the bonds.

The answer to the question propounded turns on the interpretation of Chapter 14486, Acts of 1929, and Chapter 15659, Acts of 1931. The former Act created appellant the board of administration and defined its powers and duties. The latter Act created a State fund ·from gasoline taxes with which the Board of Administration was enabled to perform the function delegated to it by the two Acts. Chapter 20648 and other Acts of 1941 (Chapter 20300 and 20301) set up new bases of credit of similar nature but did not materially change the purpose of the two Acts as first detailed except to cover bonds outstanding prior to July 1, 1931.

Chapter 15659 required that the fund created thereby be used to reimburse counties and special road and bridge districts for such amounts as they had contributed to the construction of State roads therein when represented by bonds issued and outstanding prior to April 1, 1931. We find nothing in the Act to indicate that it was intended that the State take over the bonded indebtedness of the counties and special road and bridge districts. The dominant purpose of the Act was to reimburse the counties and special road and bridge districts in amounts expended and in the manner provided by the statute and the bond contract.

The Legislature did not attempt to fix the amount of the indebtedness but provided that it be ascertained by certain State officers from an audit of expenditures made by the counties and special road and bridge districts and the funds provided were required to be used as far as they would go for reimbursement. The

language used in subsection (c) of Section 8 of Chapter 15659 to describe such amount being "the amount furnished, advanced, paid out, or contributed." In Carlton v. Mathews, 103 Fla. 301, 137 So. 815, this Court described the amount as the "moral obligations, that in justice, honor equity, and good conscience should be paid."

The board of administration construed the statute under which the bonds were issued to provide for their redemption at maturity. If this interpretation is correct, the bond contract should carry no specification for interest after maturity or until the bonds are paid but if it did, it should be enforced only to the extent warranted by the statute. We have examined the provisions of the 1941 Act extending new bases of credit as to other similar factual situations but we do not think it goes further than was intended by the two Acts in question.

In view of the foregoing and other considerations which will be later recited, the board of administration has from its inception construed its powers as prohibiting it from paying any amounts on bonds of counties and special road and bridge districts except principal and interest to maturity of the bonds and we find no reason to hold that this is not a reasonable interpretation. It treats every county and special road and bridge district alike and results in a fair basis for use of the funds provided. If done otherwise, grave inequalities are made possible.

This interpretation has advantages to commend it that make it irrebuttable. It has an eye to the practical operation of the Acts setting up the fund and defining the powers of the Board; it is no stricter than the law and circumstances warrant; and it is

the only interpretation that will avoid discrimination among counties and road and bridge districts and the holders of the bonds. It has been so long acquiesced in and so many counties and road districts have paid out under it that it should not now be disturbed.

It is not out of place to recite some concrete instances of discrimination and favoritism that will result if this rule is overthrown. What is generally known as the Kanner Act permits the counties to withhold funds that accrue to them under the 1931 Act for the purpose of purchasing their bonds at reduced prices but since there are but few if any such bonds, the funds are permitted to accumulate and may be used for other purposes and the counties reimbursed with other accumulations from the fund. Some three to four hundred thousand dollars have now accumulated in the hands of the Board of Administration in this way. It is also well known that many of the counties (thirty-seven or more) have completely reimbursed or "paid out" for their outlay under the plan pursued by the Board of Administration and that to now let others come in under a more liberal plan would be manifestly unfair to those who accepted the interpretation and have paid out. It is also well known that many of the holders of past due bonds are those who refused to enter into composition agreements but held out for payment at par. They should not be permitted to profit from a State fund to the disadvantage of those who voluntarily composed and stabilized the value of the bonds. To hold otherwise the law will aid the dawdling and not the diligent counties.

In this holding, we do not overlook what we have said in former adjudications about the availability of

commingled funds for the payment of county and special road and bridge district obligations, the disappearance of the identity of funds that have been placed in the interest and sinking fund accounts and used for the purpose herein but we do not think any of these decisions militate against the position we take in this opinion. The federal decisions relied on by appellee (Meredith, et al., v. Hardee County Special Road and Bridge District Number 5, decided June 15, 1942, and cases therein cited) appear to have been predicated on these decisions but they overlook the fundamental reason for the position here taken.

The record in this case is the shortest that has ever appeared in this Court. It contains barely five pages including the clerk's certificate but it contains everything essential to adjudicate the question raised. It cost less than five dollars and was brought up by stipulation under paragraph 5 of Rule 11. Counsel are to be commended for its brevity and completeness.

The judgment appealed from is reversed.

Reversed.

BROWN, C. J., CHAPMAN and THOMAS, JJ., concur.